## THE STATE OF KANSAS v. JOHN D. YEITER.

1. Two OFFENSES *Stated in One Section of Statute.* Two offenses are charged in § 1, chapter 104, Laws of 1881, just as distinct as if they were covered by separate sections of the statute.

2. AGENTS — *What Class Intended.* The second clause or offense of § 1, chapter 104, Laws of 1881, was intended to reach such agents as attorneys, collecting agents, etc., who collect money for their principals, and to make their improper failure to pay on demand a crime. (*The State v. Bancroft*, 22 Kas. 170.)

3. PRIVATE BANK, *Cashier of.* The terms "clerk" and "servant" of a private person, or of any copartnership, used in § 1, chapter 104, Laws of 1881, (§ 88, crimes act, ¶ 2220, Gen. Stat. of 1889,) include the cashier of a partnership operating a private bank, not incor-

porated, when such cashier is employed at a monthly salary to trans-
act the business of the firm, under its direction and control.

4. EMBEZZLEMENT — *Conviction, When Not Sustained.* Where the de-
fendant, being a clerk and servant, at a monthly salary, of a co-
partnership operating a private bank, and also being under the
direct control of such partnership, is charged with embezzlement
under the second clause of § 1, chapter 104, Laws of 1881, and it ap-
pears from the evidence that, if guilty under chapter 104, it is under
the provisions of the first clause of § 1 of said chapter, and not un-
der the second clause, and the information is not sufficient under
the first clause, no conviction can be sustained.

*Appeal from Gray District Court.*

ON November 28, 1893, there was filed in the district
court of Gray county the following amended information,
omitting caption, verification, and indorsements:

"I, James B. Naylor, the undersigned, county attorney of
said Gray county, in the name, by the authority and in be-
half of the state of Kansas, come now here and give the
court to understand and be informed, that on or about the 2d
day of June, 1893, in said county of Gray and state of Kan-
sas one John D. Yeiter was then and there employed as and was
the agent of the Bank of Ingalls, the same being a copartner-
ship composed of Wilson Soule and William W. Munsell, con-
ducting a banking business under the firm name of the Bank
of Ingalls; that the terms of said agency were that said John
D. Yeiter was employed by said firm doing business under
the name of the Bank of Ingalls to take charge of and man-
age, as agent of said firm, a general banking business at the
town of Ingalls, in said Gray county, in the state of Kansas,
said John D. Yeiter being designated as the cashier of said
the Bank of Ingalls; that by virtue of such employment as
agent as aforesaid there, then and there came into the posses-
sion of said John D. Yeiter as such agent and cashier from
various sources, in the course of such banking business, to-
gether with certain other moneys, in excess of all fees, charges
and commissions for all services by him rendered to said the
Bank of Ingalls, $18,000 lawful money of the United States
of America, the precise character, kind and denomination
thereof being unknown to informant, and for that reason
not herein given, of the value of $18,000, and all of the
said sum of $18,000 then in the possession of him, the said
John D. Yeiter as aforesaid, being the property of and belong-

ing to said the Bank of Ingalls, which said sum of $18,000, remaining after deducting from the other moneys of said the Bank of Ingalls his lawful and reasonable fees, charges and commissions for all services by him rendered to said the Bank of Ingalls, the said John D. Yeiter, agent of said the Bank of Ingalls as aforesaid, did then and there, without the permission or consent of said the Bank of Ingalls, unlawfully, fraudulently, and feloniously, and with the intent to convert the same to his own use, neglect and refuse to deliver to his employers, the said the Bank of Ingalls, when duly and legally demanded of him by his said employers; that said $18,000 had not been lost by means beyond the control of him, the said John D. Yeiter, before he had an opportunity to make delivery thereof to his said employers; and that his said employers did not permit him, the said John D. Yeiter, to use said sum of $18,000. Wherefore, the said John D. Yeiter, in the manner and by the means aforesaid, did then and there unlawfully, fraudulently and feloniously embezzle and convert to his own use the said sum of $18,000, of the value of $18,000, then and there the property of said the Bank of Ingalls, and without the assent of said the Bank of Ingalls, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Kansas. JAMES B. NAYLOR, *County Attorney.*"

On the 1st day of December, 1893, the defendant filed his motion to quash the information, which was overruled. Thereupon, the defendant waived arraignment and pleaded not guilty. Trial had before the court with a jury. On December 18, 1893, the jury returned a verdict against the defendant of guilty of having embezzled $4,989, as charged in the information. On February 5, 1894, the defendant was sentenced to be confined at hard labor for the period of three years in the state penitentiary, and to pay all of the costs of the prosecution. The defendant, *John D. Yeiter*, appeals.

*Milton Brown*, and *A. J. Hoskinson*, for appellant.

*John T. Little*, attorney general, and *Sutton & McGarry*, for The State.

The opinion of the court was delivered by

HORTON, C. J.: It was disclosed upon the trial that, in 1887, Wilson Soule and William W. Munsell, as partners, established a bank at Ingalls, in Gray county. It was called "The Bank of Ingalls." It was not incorporated. Each partner owned one-half interest. The capital was about $900. On the 4th of February, 1890, John D. Yeiter was engaged by Soule & Munsell as an employé of the bank. He was directed by them, at the time of his employment, to keep the books and accounts of the bank, the list of deposits from its customers, to pay checks to its customers, to draw drafts on its correspondents, to pay the ordinary and legiti-mate expenses of the bank, and to perform the general duties of a bank cashier. His salary was $30 a month.

At the time that Yeiter was employed, the total assets of Soule & Munsell in the Ingalls bank were $4,797.15. Wilson Soule resided at Rochester, N. Y.; William W. Munsell resided at Dodge City, in this state. The latter was the gen-eral manager for the firm of Soule & Munsell, doing busi-ness under the name of the Bank of Ingalls. Yeiter was subject to the direction and control of the firm. Munsell prescribed the system of bookkeeping of the bank, and had general supervision thereof, and also of Yeiter. He would visit the bank to look after its affairs as often as four to six weeks; sometimes more frequently, sometimes less frequently. When at the bank, he usually looked over the daily state-ments, which were supposed to show its condition, and would give such orders to Yeiter concerning the firm business as he deemed advisable. Yeiter continued as an employé of Soule & Munsell at the Bank of Ingalls until April 10, 1893. About that time, Munsell examined the bank books, became dissatisfied, and ascertained, as he believed, that Yei-ter had fraudulently appropriated large sums of money of the firm with which he had been intrusted. Subsequently, he was arrested, tried and convicted under the second clause of § 1, chapter 104, Laws of 1881.

If the defendant, John D. Yeiter, had been informed against, under the provisions of the first clause of § 1 of said chapter 104, (§ 88 of the Crimes Act, ¶ 2220, Gen. Stat. of 1889,) and sufficient evidence had been presented to sustain the conviction, he might be punished under that statute. Two offenses are charged in the statute just as distinct as if they were covered by separate sections. The first part of the statute provides that

1. Two offenses stated in one section of statute.

"Any clerk, apprentice, or servant of any private person, or of any copartnership, except clerks, apprentices or servants within the age of 16 years, . . . who shall embezzle or convert to his own use, or shall take, make way with or secrete with intent to convert to his own use, without the assent of his employer, any money, bank bills, treasury notes, goods, rights in action, or valuable security or effects whatsoever, belonging to any such person or copartnership, . . . which shall have come into his possession or under his care by virtue of such employment, office or trust, shall upon conviction thereof be punished in the manner prescribed by law for stealing property of the kind or value of the article so embezzled, taken, or secreted."

The terms "clerk" and "servant" in the statute include such employés as cashiers. (*Gravatt v. The State,* 25 Ohio St. 162. See, also, *The State v. Kusnick,* 45 Ohio St. 535.) A test used in many cases is to ascertain whether the accused was bound to obey the orders of his employer, so as to be under his control, and bound to devote his time as the employer should direct. Where there is a salary, that raises a presumption that the person receiving it is bound to devote his time to the service. The distinguishing feature of the relation of master and servant is, that the employer retains the control over the mode and manner of doing the work under the contract of hiring. A master is one who has legal authority over another, and the person over whom such authority may be exercised is his servant. Therefore, under the evidence disclosed upon the trial, as Yeiter was subject to the direction and control of

3. Private bank, cashier of.

Soule & Munsell, he was their clerk or servant at a stated salary. No fees, charges or commissions were due him for his services, as he received a monthy salary. If guilty of the fraudulent appropriation of any money or property of Soule & Munsell, and not being within the age of 16 he might have been charged and punished for the offense defined in the first clause of said § 1, chapter 104, Laws of 1881 (§ 88, Crimes Act, ¶ 2220, Gen. Stat. of 1889); but he was charged and convicted under the second clause of the amendment of 1873, as amended by the laws of 1881, upon facts not applicable to his case. (Laws of 1873, chapter 83, § 1, as amended by Laws of 1881, chapter 104, § 1.) Being a clerk or servant, or both, working upon a salary, under the direction of Soule & Munsell, he was not within the provisions of the offense defined in the second clause of § 88 of the crimes act of General Statutes of 1889 (§ 1, chapter 104, Laws of 1881).

"Obviously the amendment [of chapter 83, Session Laws of 1873, as amended by chapter 104, Session Laws of 1881,] was intended to reach such agents as attorneys, *2. Agents—what class intended.* collecting agents, etc., who collect money for their principals, and to make their improper failure to pay on demand a crime. . . . While this stands as an amendment of a section, it is complete in itself. It names the persons, describes the offense, and affixes the penalty. It was doubtless aimed at lawyers and such other collecting agents as are not liable to even a civil action until after demand, and its language was purposely made general, to include all such agents, for whomsoever they were acting. . . . The two offenses charged [under § 1, ch. 104, Session Laws of 1881, § 88, Crimes Act, ¶ 2220, Gen. Stat. of 1889,] are in law just as distinct as if they were covered by separate sections of the statute; the fact that they appear in one section does not alter their legal character." (*The State v. Bancroft*, 22 Kas. 207, 208.)

If the information in this case were sufficient under the first clause of the amendment of 1881, it would be necessary for us to examine the various errors alleged, but it is conceded that this prosecution rests upon the second clause of

chapter 104 of Laws of 1881. The information **4. Embezzlement—conviction, when not sustained.** does not describe the defendant as the clerk or servant of Soule & Munsell, and makes no allegation of his age. Therefore we deem it necessary to discuss only one other matter.

If the defendant, while he was in the service of Soule & Munsell, paid out any of their money, or used any of their property under their direction or that of William W. Munsell, the general manager of the firm, which he is charged with having wrongfully appropriated, he is entitled to prove that such moneys or property were paid out or used by him as directed. He cannot be held criminally liable for making loans in good faith, if he had authority so to do, or in paying out money or disposing of property belonging to the firm, as directed. It is immaterial whether the money or property of the firm used by him, under its direction, was paid out in the usual course of banking business, or for other purposes. The defendant can be held criminally liable only for the money or property of the firm which he embezzled or converted to his own use without the assent of the firm.

"Embezzlement is the act of fraudulently appropriating to one's own use what is intrusted to one's care and management; as the embezzlement by a clerk or servant of his employer's money.

"Embezzlement differs from larceny in this, that the latter implies a wrongful taking from another's possession; but embezzlement denotes a wrongful appropriation of what is already in the wrongdoer's possession." (Max. Crim. Proc. 120–122.)

The judgment of the district court will be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.