## USE BY PUBLIC OFFICER OF FUNDS IN BANK IN PROCESS OF LIQUIDATION.

Common Pleas Court of Franklin County.

STATE OF OHIO v. FRANK E. BAXTER.

Decided, May 14, 1913.

*Criminal Law—Use by Superintendant of Banks of Funds Under His Control—Not Within the Embezzlement Statute, When—Wrongful Appropriations Which Are Not a Complete Legal Breach of Trust—Restoration of Funds so Used—Fraudulent Conversion—Intent—Classification of the Embezzlement Statutes—Venue—Sections 12467, 12873 and 12876.*

1. The crime of embezzlement is accomplished by the absolute and fraudulent conversion of money by one in the position of trust. It is the defendant's duty to account, together with his neglect or refusal to do so that constitutes the fraudulent breach of duty, and embezzlement.  *State* v. *Bailey*, 50 O. S., 636, 646; *Campbell* v. *State*, 35 O. S., 70;  *State* v. *Gunkleman*, 13 N.P.(N.S.), 605, affirmed by the Supreme Court, followed.

2. Use by the State Superintendent of Banks, for payment of a private debt, of funds belonging to a bank which has been placed under his control for the purpose of liquidation, does not constitute a crime under the embezzlement statute, where the funds so taken were soon afterward returned to the depositary together with interest thereon during the period of such use.

*Timothy S. Hogan,* Attorney-General, *Edward C. Turner,* Prosecuting Attorney, and *H. S. Ballard,* Assistant Prosecuting Attorney, for plaintiff.

*Kent Hughes,* contra.

KINKEAD, J.

The charge made by the indictment is that Frank E. Baxter was at the time of the acts charged and until March, 1913, the duly appointed, qualified and acting superintendent of banks for the state of Ohio; that said Baxter as such officer of the state took charge of the affairs and assets of the Columbus Savings & Trust Company, and appointed as special deputy superintendent one Daniel H. Sowers to assist in the liquidation and distribution of the assets of that company; that all the property and assets of that bank came into the care, custody and control of the said Baxter as such superintendent of banks; that as part of the property of such bank there came into the hands of defendant as such officer cash money of the amount and value of $37,000.

The indictment charges that within three years prior to the inception of this prosecution, the said Frank E. Baxter, unlawfully, did take from the assets of the said the Columbus Savings & Trust Company cash money of the amount and value of $37,000, and did then and there use said $37,000 to pay and with said sum did pay a certain note made by said Frank E. Baxter and payable to the estate of John W. Gates and dated November 22, 1911, for the sum of $37,000 payable May 22, 1912, six months from date; that said Baxter did then and there convert the said $37,000 to his own use, the same being the property of the Columbus Savings & Trust Company, which sum of money so converted and used by the said Baxter had theretofore come into the possession, care, custody and control of said Baxter by

virtue of his said office of superintendent of banks for the state of Ohio.

¡The opening statement of counsel for the state is as follows:

* * * ''We expect the evidence to show that at the time set forth in the indictment the defendant, Frank E. Baxter, was the duly appointed, qualified and acting superintendent of banks of the state of Ohio, an office of public trust and profit; that by virtue of his said office there came into the possession of defendant all the assets, including large sums of money, of the Columbus Savings & Trust Company, a corporation incorporated for the purpose of and (until taken possession of by said defendant as said superintendent of banks) doing business as a safe deposit and trust company in the city of Columbus, Franklin county, Ohio.

''That pursuant to law the defendant duly appointed Daniel H. Sowers, special deputy superintendent of banks, to assist him, the said Frank E. Baxter, in the duty of liquidation and distribution of the assets of said the Columbus Savings & Trust Company.

''That pursuant to law and the orders of defendant, there were deposited on interest in the Citizens Trust & Savings Bank and in the State Savings Bank & Trust Company (both being state banks of deposit located in the city of Columbus, Franklin county, Ohio) in the name of Frank E. Baxter, as said superintendent of banks, large sums of money belonging to said the Columbus Savings & Trust Company which had come into the possession of said Frank E. Baxter by virtue of his said office.

''The evidence will further show that on November 22, 1911, the defendant had borrowed $37,000 from the estate of John W. Gates for six months with interest at six per cent., putting up as collateral 525 shares of the Texas Company, a Texas oil company.

''The note, with accrued interest amounting in all to $38,110, fell due May 22, 1912.

''Shortly before this the defendant had made unsuccessful efforts to borrow sufficient money upon this collateral from banks under his supervision to take up this loan, one bank giving him a final answer on Sunday, May 19, 1912.

''Some time in May, 1912, the defendant instructed Daniel H. Sowers that he intended opening up another bank account for funds of the Columbus Savings & Trust Company.

''On May 20, 1912, the day following the final answer given him by the Citizens Trust & Savings Bank that it would not

loan to exceed $25,000 upon the collateral, the defendant called Sowers by telephone from Lima and instructed Sowers to withdraw $20,000 of the Columbus Savings Bank & Trust Company funds from the State Savings Bank & Trust Company and $17,000 of the same funds from the Citizens Trust & Savings Bank, to obtain therefor New York drafts payable to the Bankers' Trust Company of New York, and mail the drafts to him, Baxter, at Lima. Sowers carried out these instructions thinking Baxter was going to open up another bank account for the funds.

"Baxter received these drafts late Monday afternoon and mailed them immediately to the Bankers' Trust Company of New York for the purpose of taking up his $37,000 note to the Gates' estate. Accompanying these drafts Baxter sent the following letter which is self-explanatory:

" 'Samuel A. Baxter's Sons,            Lima, Ohio.
    Lima, Ohio.                     May 20, 1912.
" 'Bankers Trust Co.,
    New York, N. Y.
" 'Gentlemen:
" 'Herewith I hand you exchange as follows:
" 'Importers & Traders Natl Bank ............$20,000.00.
" 'Standard Trust Company ................ 17,000.00.
" 'Seaboard National Bank ................... 1,110.00.

                                            $38,110.00.

" 'These drafts are made to your order and I request that you use the proceeds towards taking up my note, payable at your bank, described as follows:

" 'F. E. Baxter maker, payable to the estate of John W. Gates, dated Nov. 22d, 1911, $37,000 with 6 per cent interest from date, payable May 22d, 1912 (6 months from its date), and secured by 525 shares of stock of the Texas Company.

" 'Upon proper cancellation of the above described note, and return of collateral, please pay this money over and return note and collateral to me.

                         " 'Very truly yours,
                              " ' (Signed) F. E. Baxter.'

"The Bankers Trust Company did as requested and after applying these drafts to the private indebtedness of Baxter, forwarded Baxter the 525 shares of the Texas Company.

"Mr. Sowers did not see Baxter for about a week. The first time Baxter said nothing about the matter. About ten days after Baxter had taken this money Sowers spoke to him about it and he told Sowers that he had taken the money and paid an

obligation in New York to secure certain collateral that he, Baxter, had there in New York. Baxter further said that he would have the money back in a day or two. In a day or two Baxter came to Sowers and said 'I have that collateral that I got in New York and I will turn it over to you for your protection.' Sowers refused to accept the collateral.

"After some negotiation Baxter succeeded on June 5, 1912, in borrowing $42,000 from the Ohio National Bank of this city upon the 525 shares of stock. The Ohio National Bank gave to the defendant as proceeds of the loan one certificate of deposit for $17,000, and one certificate of deposit for $20,000 and another certificate of deposit for $5,000.

"On June 6, 1912, Baxter turned over the certificates of deposit for $17,000 and $20,000 to Sowers, and for the purpose of covering up the transaction as much as possible, as we shall expect the evidence to show, instructed Sowers to deposit the one for $20,000 in the State Savings Bank & Trust Company on that same day and to deposit the one for $17,000 in the Citizens Trust & Savings Bank later. Accordingly, Mr. Sowers did deposit the $20,000 certificate in the State Savings Bank & Trust Company to the credit of Frank E. Baxter as superintendent of banks on June 6, 1912, and Sowers also deposited the certificate of deposit for $17,000 in the Citizens Trust & Savings Bank to the credit of Frank E. Baxter, as superintendent of banks, on June 8, 1912.

"Sowers, at a loss to know how to account for the $37,000 on his books from its withdrawal on May 20, 1912, until June 6th, and 8th of the same year, carried it as two 'cash items.'

"The evidence will show that Baxter paid to the fund interest on the money which he had converted to his own use at the rate of three per cent. per annum. But the evidence will also show that no order of court was ever taken authorizing any loan of any funds to Baxter or any one else.

"In brief, the evidence in this case will show beyond all reasonable doubt that the defendant, Frank E. Baxter, converted to his own use $37,000 of the funds of the Columbus Savings & Trust Company which had come into his possession by virtue of his office as superintendent of banks of the state of Ohio."

The question is whether the fact that the defendant having received the money of the Columbus Savings & Trust Company by virtue of his appointment as state superintendent of banks and took $37,000 thereof, and used the same to pay his personal obligation as alleged, the money having been kept and used by

him for the period mentioned in the statement of counsel, when he returned the same to the banks where it had been on deposit, constitutes a crime under the provisions of Section 12876 of the code.

The problem is whether a conversion of the funds of the bank for the personal use of the defendant for a temporary period such as is shown by the statement of counsel, and not permanently, constitutes the crime of embezzlement under the statute.

Section 12876 provides that:

"Whoever, being elected or appointed to an office of public trust or profit  *  *  *  embezzles or *converts to his own use*  *  *  *  anything of value that shall come into his possession by virtue of such office  *  *  *  is guilty of embezzlement."

The whole question rests upon the construction and meaning of the language "*embezzles, or converts to his own use.*"

The origin and history of all statutes relating to the crime of embezzlement will shed much light upon the meaning and construction of the statute, and its language, by virtue of which the indictment in this case is framed.

In the first place it is well understood that the common law crime of larceny left gaps through which, in the expansion of business, many wrongdoers escaped. The statutory crime of embezzlement was first enacted in England to cure these defects, followed by enactments in all of the states in this country. The American statutes followed those of England. These statutes were enacted to make penal two phases or characteristics of wrongful acts not previously made penal by common law. If a servant, officer, or other trustee *steals* the property of his principal, or fraudulently or wrongfully converts the same to his own use, this is made penal by the new statutes, he being guilty of embezzlement.

Many expressions are found in judicial opinion to the effect that embezzlement is a species of larceny (12 Fed., 816); that it is a statutory expansion of common law larceny made to prevent a failure of justice that would occur under the technical rules which the law applied to larceny (*State* v. *Collins*, 4 N. D.,

433). While this is true, we must not allow ourselves to lose sight of the absolute distinction between the two relationships which exist between the parties, when the two crimes are committed. In larceny the initial act is a trespass, while in embezzlement there is a breach of trust, the nature and extent of which depends upon the contractual or statutory duties. While there is slight variance in language in different statutes prescribing the crime of embezzlement,· it must be conceded that the purpose and intent of all of them is to make criminal, willful, unlawful or fraudulent conversions by persons to whom property has been lawfully confided by some relation of trust and confidence.

As in the kindred crime of larceny the word "steal" was used as descriptive of a felonious taking and carrying away of the goods of another, so is it conceded that the corresponding words "embezzle" and "converts to one's own use" were found in embezzlement statutes as descriptive of an unlawful, fraudulent conversion of property by one to whose care and custody it is committed by the owner.

Looking to the statutes in Ohio, the first embezzlement statute was passed and took effect March 18, 1839 (37 O. L., 74), and was made applicable to private relationships, embracing individuals and corporations. The terms used therein were "whoever shall embezzle or convert to his own use, or fraudulently take, make way with, or secrete with attempt to embezzle or fraudulently convert to his own use," etc. It might be observed that the word "embezzles" expresses all that is used in that statute, the remaining being descriptive of the same kind of an act as the words which follow, unless it be to "secrete with intent to embezzle." The same language has been used in the statute throughout its history, and today Section 12467 provides:

"Whoever embezzles or converts to his own use, fraudulently takes or makes way with or secretes with intent to embezzle or convert to his own use," etc.

What is now Section 12873 (the public officer statute) was first enacted March 2, 1846 (44 O. L., 112), (Swan & Critchfield, page 1286). From the beginning this act made it embezzlement

for "any officer elected or appointed  *  *  *  or of any agent or servant of this state (to) convert to his own use, *in any way whatever,* or who shall use, by way of investment, etc., or shall make way with or secrete any portion of the public moneys," etc. Originally by this act it was unlawful to loan out any public money. The penalty for the loaning was by fine. When the independent treasury act was passed April 12, 1858, what is now Section 12873, and which was originally enacted March 2, 1846, became Section 15 of that act, its provisions being precisely those of the present statute; and the existing section, 13674—the so-called *prima facie* evidence statute—was enacted at that time and now applies exclusively to Section 12873 by its terms and provisions. In some ways, under certain language of Section 12873, the rule of evidence prescribed by Section 13674 will apply to other classes of embezzlement. Indeed, the rule enacted by Section 13674 may be said to be the rule in absence of statute in the common type of embezzlement.

In the evolution of the statutes, we have Section 12876 which was separated from the other statutes, leaving Section 12873 to apply exclusively to public officers handling public moneys; while Section 12876 was designed to apply to all persons who are elected or appointed to an office of public trust who handle money not strictly public, though in some instances it may be; and it was intended to take the place of other statutes theretofore existing, concerning officers elected or appointed which were scattered throughout the statutes.

It is to be noticed that the language of Section 12876 more strictly comports with that of Section 12467 relating to private embezzlement.

The money coming into the hands of the superintendent of banks by virtue of his appointment, is not public money as is that which is paid into the state treasury or to the secretary of state. It is in fact private funds. It belongs to the depositors and stockholders of the Columbus Savings & Trust Company, but that is of no consequence except to refute the claim that was made in argument concerning the provision of the statute with respect to the care of public moneys.

The question here is the meaning of the words "embezzles or converts to his own use."

The primary signification of the word "embezzle" according to standard dictionaries is that it means to appropriate or divert fraudulently to one's own use, as money intrusted to one's care or control; apply to one's use in breach of one's trust; to misappropriate secretly; purloin. See, *State* v. *Trolson,* 21 Nev., 419.

It is to appropriate or divert falsely to one's own use. 112 Fed., 790. It means to appropriate fraudulently to one's own use; to apply to one's private use by a breach of trust. 49 La. Ann., 197; 62 Am. St., 644.

Embezzlement is the fraudulent removing and secreting of personal property intrusted to one. 37 Cal., 51. Bouvier Dict.; 40 N. Y. Super., 41; *Foster* v. *State* (Del.), 43 Atl., 265, 2 Pennewell, 111. It means a felonious appropriation; and where the word "embezzlement" is used in a statute, it is construed in its technical signification; it has a technical meaning. *U. S.* v. *Greve,* 65 Fed., 488; *Wall* v. *State,* 56 So., 57. It is defined as an act of fraudulently appropriating to one's own use what is intrusted to the party's care and management. 18 Neb., 440; 54 Kan., 277; 3 Words & Phrases, 2351. See McClain Cr. Law, Sections 621, 622; Bishop Cr. L., Section 325. See also 21 C. C., 26.

The use of the words "convert to one's own use," "embezzle" or "embezzlement" contemplates a wrongful conversion. "Conversion" is an unauthorized assumption and exercise of the right of ownership over goods, belonging to another, to the alteration of their condition or the exclusion of the owner's rights. *Penny* v. *State,* 88 Ala., 105; 33 Ala., 515.

To constitute an appropriation or conversion, there must be a secretion, a destruction, or wrongful taking. In the sense used in tort, conversion is the appropriation of a thing to one's own use and beneficial enjoyment, or its destruction, or in exercising dominion over it, in defiance of the right of the owner, or withholding the possession from the owner. 2 Words & Phrases, 1562.

The use of the words, "embezzles" or "converts to his own

use,'' are both meant to convey the same thought or idea, that any-one sustaining a relation of trust and confidence shall fail to maintain and keep the subject of the trust according to the terms and conditions, or according to the law regulating the same.

Under the common law, if one acquiring property lawfully converted it to his own use, he could not be punished for larceny.

A positive and conclusive definition of the crime of embezzlement is furnished by the Supreme Court as follows: ''Where * * * the crime has been accomplished by the *absolute and fraudulent* conversion of the money of the employer to the use of the agent * * * completes the offense. *State* v. *Bailey*, 50 O. S., 636, 646.

There is no crime without criminal intent, save one or two; and we must distinguish between the so-called common intent in crime, and that class of crimes where the specific intent is an essential ingredient, and this crime is one where there is no specific intent, but it may be .designated as a common, ordinary criminal intent, that follows from the unlawful commission of the act charged. A proper understanding of *Mitchell* v. *State*, 21 C. C., 24, strongly urged in argument, does not sustain a contrary view, the question there being simply whether intent should be averred in the indictment. Of course .in cases of specific intent, it need be; in others, not. The conclusion must be that the two stat-utes, Sections 12467 and 12876, prescribe the same kind of a crime, with the same characteristics and elements, and cases coming under either must measure up and pass the same tests.

In fact, it seems true also that at least one provision in Section 12873, in so far as it prescribes the crime of converting public moneys to one's own use, which constitutes embezzlement, pre-scribes the same crime of embezzlement in respect to public moneys as is found in Sections 12467 and 12873. Reading the words ''converting to one's own use'' with those constituting such act of embezzlement, considering the word ''embezzle-ment'' as used in the latter part of that section in its technical sense and meaning, as we must do, the conclusion must be that

it makes the act of converting public money to one's own use embezzlement, thus prescribing the same crime with the same element and characteristics as do each of the other statutes.

Attention, however, is thus directed to only part of the provisions of Section 12873, for the sole purpose of showing that the state has enacted an embezzlement statute covering private relations, official relations, where the money comes into the hands of persons elected or appointed to an office of public trust, and lastly, to public moneys received by persons charged with the collection, receipt, safe-keeping, transfer or disbursement thereof, which belongs to the state and other public agencies.

There seems to be no reasonable ground of contention against this classification, the only point where controversy might be raised being in respect to the language in Section 12873. But certainly the fact that there are three separate statutes prescribing separate crimes for each kind of relationship, is cogent evidence of the general purpose and intent of the statutes.

This statement of the general policy of the state is made only for the purpose of deriving what aid, if any, may be drawn, from cases arising under any of the statutes, as well as from the general policy of legislation.

While not expressing any final view under the particular portion of Section 12873 mentioned, and particularly not having in mind any other portion of that section than the one now here mentioned, the reason for referring to it at all being merely to call attention to some things that have been stated in reference to it by certain decisions.

Let us further consider the constituent elements of the crime of embezzlement. They are the following:

1. There must be a breach of a duty or trust in respect to money, property or effects in the party's possession belonging to another.

2. There must be a wrongful or fraudulent appropriation thereof by the person charged, to his own use.

3. The intent follows as matter of presumption or inference of fact from the wrongful conversion.

What constitutes a wrongful conversion must depend entirely upon the duties required by reason of the trust or contractual relation or statutory obligation or duty. For example, if an agent collects money and converts it to his own use and fails to turn the same over to his principal within the time he ought to do so, or is required to do, the duty is violated, and the crime is then complete. Nothing he may do thereafter can eradicate the crime.

If, on the other hand, his contractual obligation is such that he is required to pay or account only within thirty days after its collection, and he uses the money, but later secures other money and performs the duty according to contract, and pays it to his principal according to his duty and obligation, he has not been guilty of a breach of his contractual duty, nor has he committed a crime, although he may have committed a moral wrong. The intent which he had when he temporarily converted it to his own use, may have been to make good his contract and perform his obligation. We can not then, it seems clear, apply to such situation the rule of law prevailing in larceny, where there is a wrongful taking by trespass, and the crime is complete in such case though the money was afterwards returned.

This simple illustration seems clearly to point out the distinction between larceny and embezzlement, and to show how it requires a conversion in the latter crime, such as will unqualifiedly show a complete breach of duty or trust according as the latter may be prescribed.

So, take it in the case at bar. By statute it was made the duty of Baxter, as superintendent of banks, to take charge of the money of the Columbus Savings & Trust Company, and to deposit it in banks, as prescribed in Section 742-6. It was furthermore made his duty by law at a certain time, as prescribed in Section 742, that he, as "superintendent of banks may" (of course, that means "shall") "out of the funds remaining in his hands after the payment of expenses, declare one or more dividends, etc., such dividends to be paid to such persons

and in such amounts and upon such notice as may be directed by the common pleas court.'' Before that time was reached, however, in the administration of his trust, he had taken out of the banks the amount named in the indictment, and had used it in the payment of his own debt; and within a short time thereafter he repays the amount so taken, with interest. If he had continued in the office to the present time, the money would have been there with which to pay the dividends according to the statutory duty imposed upon him.

Then is it not clear that he has not made such a wrongful and fraudulent appropriation as constituted a complete legal breach of his trust, and the duties thereof, which is the essential requisite of the crime of embezzlement? He may, as in the simple illustration of the agent, have committed a moral wrong; but not a crime as it has existed for so many years. And if it is to be considered a crime, it is for the Legislature, and not for the court, to so prescribe.

Stealing, with the proper intent, for even a short time is the rule in larceny, because that was the common law conception. But temporary wrongful appropriation in embezzlement will not constitute the crime if at the time fixed for the performance of the duty of accounting is at hand, the same is fulfilled.

When the conversion is made complete by failure to perform the duty at the fixed time, the crime is then complete, and repayment will not atone for it. It will be discovered on examination that the cases concerning the inefficacy of repayment to wipe out the crime, are those where there has been a clear breach of duty when the crime is complete. The case of *U. S.* v. *Gilbert*, 4 O. Fed. Dec., 251, cited by the state, is an illustration of such rule. A postmaster must have the money on hand at all times and especially when an inspector comes to make an examination. If it is not there at that time, the crime is complete and repayment will not be effective.

As held in the recent case of *Robinson* v. *Commonwealth*, 104 Va., 188:

''The restoration of public funds embezzled by an officer can not relate back so as to efface the prior completed crime.''

In fact the cases are numerous on this point.

In the Magly case, referred to in argument, the inspector walked in and found the shortage, and repayment would not wipe out the crime under the statute. So has the rule above stated been clearly shown in the embezzlements in the cases of private relationship by the cases of *Myers* v. *State*, 4 C. C., 570 (Hamilton County C. C.), and *Young* v. *State*, 6 C.C.(N.S.), 53, affirmed in 73 O. S., 372, which rule is conceded in argument by the state. I simply need to call attention to the distinctions drawn in these cases between the classes of embezzlement of public moneys and private funds, for purposes of illustration, of certain phases of the statute, but refrain from expressing any opinion in respect to the classification and the distinction there made, and concerning what is said by the court in one of the cases cited, in this connection.

I may also in like manner refer to the reasoning of Judge Ranney, in *State* v. *Buttles,* 3 O. S., 309, where a similar distinction was drawn, and the view of the court there expressed concerning the general policy and purpose of the statutes.

I have studied *State* v. *Gunkelman,* 13 N.P.(N.S.), 665, several times. I first thought it was not an authority. The facts were not given in the report. But the papers and briefs which are now submitted disclose that the treasurer of the board mingled the public money with his own; and when he drew certain checks upon such combined funds in payment of his own debts, the same were paid, the result being that he drew on the funds of the board of education and used the same in the payment of his obligations. I have not had time to study all of the record, but it has been suggested I believe by the Attorney-General that the record did not disclose that he knew he was overdrawing or something to that effect. By the application of Section 13674, the trial court ruled that the treasurer could be held for conversion only where there has been a default, or where there has been a failure or refusal to pay over or to produce the money. This case was taken to the Supreme Court, and the exceptions were overruled. Default on the part of the officer was the question involved in that case,

as it is in this. And the action of the Supreme Court was a definite and positive approval of Judge Stroup's opinion.

This court can not therefore overrule the Supreme Court.

In this case it clearly appears that the act of temporary conversion was committed at Lima, Ohio, where the inferential intent was formed. But the duty of the defendant imposed upon him by law in his office of trust is to be performed in Franklin county. Instead of committing an absolute and complete breach of that duty, he returns the money, pays it back, into the bank, with interest, so that the crime of embezzlement is not complete. And from these facts, the same being conceded, there can be but one inference drawn therefrom, namely, that he did not intend to fraudulently and absolutely appropriate the money and entirely deprive the owners thereof of their rights.

The view here expressed is consistent with the law of this state, as found in *Campbell* v. *State,* 35 O. S., 70-76, and *State* v. *Bailey,* 50 O. S., 636, which are conclusive of the question here.

These cases support the view that there are two acts involved in this crime; that is, the one specific act that there must be a breach of trust and a distinct act of conversion. In the case at bar, the breach of trust which constitutes the act of embezzlement from which you can infer the intent, was committed in another county, if committed at all, and as I have stated before, this intent evidently was inferentially formed in Lima, and the act of temporary conversion was committed there, and his duty to account was in Franklin county, because his office is located here, and he actually did return the money in this county.

In the case of *Campbell* v. *State, supra,* the question was as to where the offense was committed.

An agent having money in one county where it was his duty to account forms the purpose to embezzle it, and carried it into another county, demand being made, refuses to account in the first named county, such agent is guilty of embezzlement in the first named county.

The venue was properly laid in the county where he was to account.

The removal of the money from such county for such purpose, as well as the refusal to account, was an act of embezzlement. The fallacy of the plaintiff's position is in the assumption that the only act of embezzlement is in paying out of the money by the agent for his own use. Suppose he had retained the money in his own possession and had merely refused to account, the crime would have been complete; while, on the other hand, if the money had been expended, and he had accounted at the proper time with his employer by the payment of other money of equal value, no offense would have been committed.

The opinion of the court in *State* v. *Bailey,* 50 O. S., 636, is an exact and conclusive authority to the effect that: "It is the defendant's duty to account, together with the neglect or refusal to do so, that constitutes the fraudulent breach of duty."

I need only add in conclusion that the court follows what seems to be the well settled rules of construction of the statute as well as the fundamentals of the crime of embezzlement, and also the rule of strict construction which applies in criminal statutes; and as has been observed in other cases, the long silence and acquiescence in the conception that a complete breach of the trust relations and duty, whatever it may be, under particular circumstances, is necessary to constitute the crime, in our opinion, bespeaks for the soundness of the conclusion reached in this case. If there is not a remedy for what may be regarded as a moral wrong in such case as this, it is for the Legislature to create one and not for the court.

For the reasons stated, the court directed the jury impanneled in this case to return a verdict in favor of the defendant.