MAHLON B. FOSTER, defendant below, plaintiff in error, *vs.* THE STATE OF DELAWARE, plaintiff below, defendant in error.*

*Embezzlement—Agency—Construction of Statute.*

1. Embezzlement is a purely statutory offense, unknown to the common law, and is the wrongful conversion of property where the taking and possession are lawful, the person of the wrongdoer and the property converted being within the terms of the statute.

2. *Chap. 153, Vol. 16, Laws of Delaware,* as amended, dispenses with the necessity for authority from the master to the servant to receive the money or property, being the subject of embezzlement, to bring the wrongdoer within the terms of the statute.

3. Length of employment is immaterial, and a casual as well as a continuous employment of one as servant or agent falls within the contemplation of the statute.

4. The word "others," in the title of the act, construed.

5. The constitutional requirement that the subject of a bill should be expressed in its title, has the effect to make the title a part of the enactment.

6. The rule requiring a penal statute to be construed strictly, does not prevent the ascertainment of the legislative will, that being the primary consideration, and is not violated in giving the words of the statute a reasonable meaning, according to the sense in which they were intended.

7. The gist of the offense of embezzlement is the breach of the trust reposed in the class of persons enumerated in the statute.

*See *State vs. Foster, 1 Pennewill, 289.*

8. If an agency be created for the negotiation or disposal of a promissory note, then the endorsement thereof by the agent is a mere incident to the relation or undertaking; and is the result of the extrinsic agreement between the parties with reference to the negotiation of the note.

9. A person who is employed by the maker of two promissory notes for the purpose of negotiating them and turning the proceeds thereof over to the maker of the notes, is an agent within the meaning of the statute, and is guilty of embezzlement for fraudulently converting the proceeds, or any part thereof, to his own use.

10. When there are facts and circumstances disclosed by the evidence, from which it is competent for the jury to infer the existence of the relation of agency, it is the duty of the Court to submit the question to the jury, under proper instructions.

11. An agreement to pay commissions is a fact of great weight tending to prove the existence of the relation of agency within the statute.

*(April 18, 1899.)*

NICHOLSON, CH., and PENNEWILL and BOYCE, J. J., sitting.

*Herbert H. Ward* for plaintiff in error.

*Robert C. White,* Attorney-General for defendant in error.

Supreme Court, June Term, 1898. (Opinion delivered April 18, 1899.)

WRIT OF ERROR to the Court of General Sessions of the State of Delaware in and for New Castle County. See facts in opinion of Court.

BOYCE, J., (delivering the opinion of the Court):

The indictment upon which Mahlon B. Foster, the plaintiff in error, was convicted, was found under the first section of an act, entitled, "An act concerning embezzlement and defalcation by corporate officers and others," being *Chapter 153, Volume 16, Laws of Delaware,* as amended, which declares " that every cashier, servant, agent, or clerk to any person, or to any body corporate, or being employed for the purpose, or in the capacity of a cashier,

servant, agent, or clerk, by any person, or body corporate, who shall embezzle, fraudulently abstract, or misapply any money, goods, bill, note, bond, check, evidence of debt, or other valuable security, or effects, which, or any part whereof, shall be delivered to, or received, or taken into possession by him, or to which he has access for, or in the name, or on account of his master, or employer, although such money, goods, bill, note, bond, check, evidence of debt, or other valuable security, or effects, was not received into the possession of such master, or employer, otherwise than by the actual possession of his cashier, servant, agent, clerk, or other person, so employed, shall be deemed guilty of a misdemeanor," etc.

The indictment contains three counts. The State, at the trial, relied upon the last two counts, they, each, averring the defendant to have acted as the "agent" of Margaret H. Wells, the prosecutrix.

The money, with the embezzlement of which the defendant below is charged, is a certain sum of money of the value of one hundred and thirty dollars, it being a part of the proceeds of a certain promissory note which from the evidence the prosecuting witness was made and delivered, on or about the 26th day of May, 1897, under the following circumstances:—Being in need of money, she made application to one Harry Ramsberger, a tenant of hers, who had on former occasions assisted her, when in like need. He was at that time unable to accommodate her, but recommended that she make two promissory notes for $125 and $240, respectively, to the order of Foster, the plaintiff in error, whom she did not then know, she agreeing to pay $25 and $40 for the negotiation of the notes, respectively.

The notes were made as recommended and delivered by the prosecutrix to Ramsberger, at the same time, under similar circumstances, and without any consultation or understanding with Foster by the maker, to hand to Foster for negotiation, for the purpose of procuring money for the maker of the notes. Shortly after having received the notes, Foster negotiated the smaller note, and paid out of the proceeds thereof to the prosecutrix through Ramsberger, the

sum of $100, that being the amount stipulated which she should receive out of that note. The negotiation of the $240 note was delayed until the early part of June following, when Foster endorsed it to one William H. Wickersham, and received therefor, on the 7th day thereof, a credit on the books of the latter on account of an unpaid book account which Foster owed him, and, in addition thereto, the sum of eighty dollars, and on the 11th day thereof, Foster was paid the further sum of $36.32 on the note, making the cash amount which he received thereon, the sum of $116.32, or, as testified to by Wickersham, the sum of $120 less the discount. For the balance of the note, the amount of which the evidence does not disclose, Foster was to receive some new goods of Wickersham.

It is assigned as error (among other assignments thereof) that the Court refused the motions made at the close of the testimony for the State, and again at the close of the testimony in the case, for peremptory instructions to acquit, (1) " because," as alleged in the prayers therefor, " the defendant was not, in the transaction complained of, the agent of the prosecuting witness;" (2) " because the defendant was not the cashier, servant, agent, or clerk of Mrs. Wells, the prosecuting witness, nor was he employed for the purpose, or in the capacity of cashier, servant, agent or clerk by said prosecuting witness within the meaning of *Chap. 153, Volume 16, Laws of Delaware*, being the statute against embezzlement."

The exceptions to the record thus made were argued before us under assignments of error, Nos. 1 and 3, 2 and 4, contained in the brief of counsel for the plaintiff in error. We shall consider them somewhat together, dealing at first, more particularly with the last two, which perhaps, raise the most important question involved in this case.

Assuming for the present that the relation of principal and agent, in the transaction complained of, did exist between the prosecuting witness and the defendant below, the question still remains whether that relation, it being for a single transaction, is such in its character and duration as is contemplated by the statute.

This question having been raised for the first time, perhaps, in

our courts, and particularly in this Court, it may not be inappropriate to review to some extent the history, character, and purpose of the earlier acts against embezzlement, and by so doing we may reach a more correct interpretation of our statute against the offense.

Both here and in England statutes have been enacted for the purpose of supplying defects in the common law of larceny, so as to reach and punish the fraudulent conversion of money or property which could not be reached by the common law. Larceny involves the element of an original unlawful taking, and differs from embezzlement in that it is the wrongful conversion of property where the taking and possession are lawful, the person of the wrongdoer and the property converted being within the terms of the statute. And many of the authorities speak of embezzlement as a sort of statutory larceny.

*10 Amer. and Eng. Ency. Law (2d Ed.), 980.*

It is a purely statutory offense, unknown to the common law; yet, in this State, as mostly elsewhere, it is a separate and distinct offense from larceny. It is necessarily so with us, for our statute makes the offense a misdemeanor, while larceny is a felony.

It has been said that the whole doctrine of embezzlement has evolved from the first two modern English statutes, enacted to reach the wrong. The first of which (*39 Geo. 3, c. 85*) was enacted in 1799, and it provided that "if any servant, or clerk, or any person employed for the purpose, or in the capacity of servant, or clerk, to any person or persons whomsoever, or to any body corporate or politic, shall, *by virtue of such employment,*" (the italics are ours) "receive or take into his possession * * * for or in the name or on account of his master," etc. This statute was superseded by *7 and 8 Geo. 4, c. 29, Sec. 47*, which was substantially the first statute in a more compact form. The latter enactment has been superseded by *24 and 25 Vict., c. 96, Sec. 68*, and it declares "whosoever, being a clerk or servant, or being employed for the purpose, or in the capacity of a clerk or servant, shall fraudulently embezzle any chattel, money or valuable security, which shall be delivered to, or

received, or taken into possession by him, for or in the name, or on the account of his master or employer, or any part thereof, shall be deemed to have feloniously stolen the same from his master or employer, although such chattel, money, or security was not received into the possession of such master or employer otherwise than by the actual possession of his clerk, servant, or other person so employed." *   *   *   ."

Mr. Greaves, in his *Criminal Law Acts*, at page 156, says: " In the present clause (referring to the statute last recited above) the words ' by virtue of such employment' which were contained in the former enactments are advisedly omitted in order to enlarge the enactment and get rid of the decisions on the former enactments. The clause is so framed as to include every case when any chattel, etc., is delivered to, received, or taken possession of by the clerk or servant for, *or* in the name, *or* on account of the master." *    *    *    "And the effect of this clause is to make the possession of the servant the possession of the master whenever any property comes into his possession within the terms of this clause, so as to make him guilty of embezzlement if he converts it to his own use."

He cites a number of decisions made under the former enactments, and says, " these cases and the words of the former and present clauses were brought before the Select Committee of the Lords, and they unanimously agreed that the law ought to be altered, and that the present clause did alter it effectually."

The phrase " by virtue of such employment " is not contained in the statute of this State against embezzlement. And it will prove interesting to note how nearly the important phrases of the present English statute have been incorporated into the statute of this State, and in the same grammatical relation. They will be found to be almost identical, except the phrase, " or to which he has access," which is added to our statute, thereby enlarging it in its scope, to that extent, over the English statute.

The statute of this State is, therefore, after the fashion of the English statute, so framed as to include " every cashier   *   *   *

to any person, or to any body corporate, or being employed for the purpose, or in the capacity of a cashier   *   *   . *   by any person, or body corporate, who shall embezzle   *   *   * any money   *   *   *   , which, or any part whereof, shall be delivered to, or received, or taken into possession by him, or to which he has access, for, or in the name, or on account of his master or employer   *   *   *   ," although as Mr. Greaves says, " it was neither his duty to receive it, nor had he authority to do so."

We find that the phrase "by virtue of such employment" is contained in many of the statutes of our sister States against embezzlement. And the decisions in those States have not only found expression in, but they have largely followed those of the English courts, made under the earlier English statutes. We cannot, therefore, look to those decisions for material aid in the proper interpretation of our statute. It must need no argument to support the proposition that a statute, requiring only that the money or property, or any part whereof (it being the subject of embezzlement within the terms of the statute), which shall be delivered to, or received, or taken into possession by the servant or person employed, or to which he has access, etc., is much broader and more comprehensive in its scope and purpose than is a similar statute which makes it necessary that such servant or person employed shall "by virtue of such employment" receive the money, etc. And it is evident that the statute of this State, like the present English statute, does away with the requirement of the earlier English statutes and of many of the American statutes, that the clerk or servant shall, "by virtue of such employment," receive or take into his possession, etc. It dispenses with the necessity for authority from the master to the servant to receive the money or property, (it being the subject of embezzlement,) to bring the wrongdoer within the terms of the statute.

The offense being statutory, and the statutes varying in their terms, there can be no one definition of embezzlement applicable to all the statutes. In a general way, the wrong may be described as

the embezzling of property designated in the particular statutes, by the persons, and under the circumstances specified therein. The act of embezzling consists of a fraudulent misappropriation by one of another's goods to his own use, or, at least, of depriving the true owner of them.

*2 Bish. New Crim, Law, Sec. 325.*

Because the statutes vary so much in their terms, embezzlement is, after all, what the particular statute defines it to be. And the offense, so far as it may be punished by the statute, can only be committed by the classes of persons enumerated, and of the kinds of property designated in the particular statute.

Returning now to the question whether an agency for a single transaction, touching property designated by the statute, is such an agency as falls within the terms of the statute of this State, we observe, first, that the learned counsel for the plaintiff in error seems to think that the word " others," at the end of the title of the act, being a word of more general, but undefinable import, following the phrase " corporate officers " therein, should be construed to mean persons similarly situated as corporate officers, and that therefore, the act is directed against " corporate officers and othes " *similarly situated.* And he would have us hold, under this construction, to be gathered, as he seems to find it, from the meaning of the title of the act, that " others " therein, means that every cashier, servant, agent, or clerk *" to any person,"* within the terms of the statute, is such a person similarly situated *" to corporate officers."* And that because the plaintiff in error was not, in the transaction complained of, similarly situated to corporate officers, he does not, therefore, come within the terms of the statute.

He says, if that be the true construction of the act, and had the prosecuting witness been a corporation, the act would certainly not extend to the defendant; that the same classes of persons who may be guilty of embezzlement from "any person," and from "any body corporate" are enumerated; that there appears to be no reason, on the face of the statute, why the words, " cashier, servant, agent, or clerk " should be given any different construction when

related to "any person" than that given to such words when related to "any body corporate." We fail to see why there should be any difference between the persons thus enumerated, within the contemplation of the statute, whether they sustain the relation to "any person," or "to any body corporate." Such a construction does not, however, carry with it the contention made by the learned counsel that it limits such "cashier, servant, agent, or clerk to any person" to those *generally* employed by such person, excluding those *specially* or *occasionally* employed.

We think the language of the statute evinces a more comprehensive purpose and design. For while corporate officers, and servants and agents of corporations, are usually employed for a fixed term, or for an indefinite period, nevertheless, "any body corporate," as well as "any person," may establish between it and an individual the relation of principal and agent, or of master and servant, in and about a single matter, or a particular transaction, so as to bring the person thus employed within the terms of the statute; and that a *general* employment of persons enumerated in the statute whether for "any body corporate" or for "any person" is not essential to bring such persons within the natural meaning and import of the statute, fairly and reasonably construed.

Possibly the first part of the contention of the learned counsel might be maintained, if the act as originally enacted was before us for interpretation. That act was directed against "every president, director, manager, cashier, secretary, treasurer, clerk or agent of any incorporated bank, or of any banking association, savings fund society, loan company, benevolent society, charitable institution, insurance company for the insurance of lives or of property." It was directed against officers and agents of incorporated banks and associations, and against officers and agents of similar institutions not necessarily incorporated. And under that statute it might be said that it was directed against "corporate officers" and "others" *similarly situated.* Yet under that act, we are not prepared to hold that a general employment would be necessary or that a special or an occasional employment would not have been

sufficient to have brought the persons enumerated therein within the purview of the statute. But section 1 of the act has, by legislative enactment, without any change in the title of the original act, been stricken out and substituted by *Chapter 692, Volume 18, Laws of Delaware;* and the plaintiff in error has been indicted under the substituted section of the act as amended. The original act as well as the amendment thereto was enacted before the adoption of the present Constitution of this State; and it was not required under the preceding Constitution, as it now is, that the subject of a bill should be expressed in its title, which requirement has the effect to make the title a part of the enactment.

The title of the act, therefore, can have little or no influence in this case to vary or control the meaning of the enacting part, if the latter is plain and unambiguous.

*Black on Interpretation of Laws, 170.*

We fail to observe any ambiguity in the statute with reference to the question under consideration.

The learned Judge, in charging the jury upon the question of the kind of agency contemplated by the statute, said : "The learned counsel for the defense seems to consider that this statute applies to an agent in the more general sense and not to an agent for this particular kind of transaction and particular purpose, and that therefore    *    *    *    *    such an agency is not within the meaning and operation of this law    *    *    *    . It is the opinion of this Court that one person may create another an agent to do a single thing for a particular purpose, and that such an agency is within the meaning, contemplation and operation of this act."

Mr. Bishop (*2 New Crim. Law, Sec. 346*) says : "The doctrine is now settled that the employment need not extend beyond the one transaction ;" and cites numerous authorities in support of the text.

The rule seems to be established that the length of employment is immaterial, and that it may not extend beyond the one transaction. An employment for the single occasion is sufficient to consti-

tute one a servant. And a casual employment of one as agent falls within the statutes punishing embezzlement by agents, as well as a continuous employment.

*10 Amer. and Eng. Ency. of Law (2nd, Ed.), 1002 and 1005, citing, State vs. Baxter, 58 N. H., 604; State vs. Foster, 37 Iowa, 404; Reg. vs. Thomas, 5 Cox Cr. Cas., 403; Pullman vs. States, 78 Ala., 31; and Com. vs. Newcomer, 49 Pa. St., 478.*

In the case of *Commonwealth vs. Foster, 107 Mass., 221,* the facts in which being somewhat analogous to this case, it was held, one who is employod by the maker of a promisory note, not as a broker, but merely to sell it and receive the proceeds and pay them over specifically to a third person is an agent within the statute, and is guilty of embezzlement for fraudulent ly. converting them to his own use. And in the case of *Campbell vs. State, 35 Ohio State, 70,* it was held that an endorser of certain promisory notes, who employs an agent to collect the same and account to him for the proceeds, is an *employer,* within the meaning of the act against embezzlement.

We fail to perceive why the relation of master and servant, or of principal and agent, within the scope and purpose of the statute, may not exist with reference to a single transaction; and we hold that in order to constitute such a relation, within the meaning and contemplation of the statute, it is not necessary that there should be more than one act authorized, or more than the undertaking of one act or transaction for, or in the name, or on account of the master, or employer.

In the case at bar the bare temporary charge of the possession of the notes and the negotiation thereof, undertaken by Foster for Mrs. Wells, although he may not have been in her regular employment, is sufficient to create the relation of principal and agent for the purpose of the engagement; if, in fact, the evidence discloses such an undertaking by him.

In arriving at this conclusion, we have not been unmindful of the suggestion made by the learned counsel for the plaintiff in error that the statute is penal, and must, therefore, be construed strictly.

This rule does not prevent the ascertainment of the legislative will, indeed if we may, this being the primary consideration; and it is not violated in giving the words of the statute a reasonable meaning, according to the sense in which they were intended.

*Bish. on Statutory Crimes, Secs. 200 and 212.*

There is authority as well as reason to sustain the conclusion that an agency of the kind and character before us, if in fact it exists, falls within the manifest purpose and intention of the Legislature. And the view which we have expressed carries into effect the legislative intention of a wholesome statute.

We now come to the question raised by the first and third assignments of error—that is, whether the relation of principal and agent, such as we have defined, did, in fact, exist between the parties. It is essential that such a relation should have existed, because the counts in the indictment, relied upon, aver the defendant to have acted as the "agent" of Mrs. Wells.

It is urged by counsel for the plaintiff in error that the latter is wholly unaffected by any conversation between Ramsberger and Mrs. Wells when the notes were signed by her, or at any other time when Foster was not present, or by any instructions then laid upon Ramsberger by Mrs. Wells relative to the notes, or by any expectations of Mrs. Wells as to the time or manner of negotiating the notes and the time or manner of accounting to her for the proceeds of such negotiation, unless it appears from the evidence that such conversation, instructions and expectations were communicated to Foster, either directly by Mrs. Wells or through Ramsberger.

The contention is thus fully stated, because it squarely presents the issue of fact involved in the question now under consideration. Upon this issue the learned Judge charged, in part, as follows: "In support of the contention of the Attorney-General, it is incumbent upon him, in behalf of the State, to show you, first, that Foster, the defendant, was created the agent of Mrs. Wells for the purpose contended for by the State. In order to prove that agency, he must show you not only that the alleged principal gave the authority claimed, but also that the agent agreed to execute that

authority and perform the duty; because no one can make an agent of another without the consent of the person who is to be agent. It is for you, upon all the evidence, to determine, first, whether Mrs. Wells, through Ramsberger, conveyed authority for the purpose claimed by the State; secondly, whether Foster was informed by either Ramsberger or Mrs. Wells of the purpose and of the authority which she desired and expected to be conferred upon him; and if he did receive it, whether he accepted that authority or not, and undertook to discharge it."    *    *    *    "An agency may be proven in either express language, written or oral, by direct evidence, or it may be proved by indirect evidence." And in addition to that part quoted, the contentions of counsel on both sides as to the question of fact involved were fully and minutely set forth in the charge,—so much so that there can be no doubt in the minds of this Court that the jury passed upon that very question, and did find by their verdict that the relation of principal and agent for the 'particular transaction alleged did exist between the parties.

It remains, therefore, to inquire whether the evidence which had been adduced at the close of the testimony by the State, or at the close of the testimony on both sides, warranted the Court in permitting the case to go to the jury, or whether the peremptory instructions to acquit the defendant should have been given, as prayed for, at either stage of the case at the trial thereof.

Before considering these inquiries, it may be said that the gist of the offense charged is the breach of the trust reposed in the class of persons enumerated in the statute, although every breach of trust is not punishable under the statute.

In the case at bar, the notes delivered to the defendant below were given to him for the purpose of procuring money for Mrs. Wells, and not for the purpose of transferring to him any property therein, or the money, or any part thereof, received by him upon the negotiation thereof.

*Commonwealth vs. Foster, supra.*

The fact that the notes were made to the order of the defend-

ant below and that he had to endorse them before negotiating them is not, in itself, necessarily inconsistent with or repugnant to the relation of an agency, created expressly for the purpose of the negotiation of the notes, if, in fact, such a relation had been created for the particular purpose.

If an agency be created for the negotiation or disposal of a promissory note, then the endorsement thereof by the agent is a mere incident to the relation or undertaking. Such a relation does not, however, grow out of the making and the endorsement of the note, between the maker and the endorser; but it is effected by the extrinsic agreement, if any, entered into between the parties with reference to the negotiation or sale of the note.

It is insisted by the counsel for the plaintiff in error that the relation of Foster to Mrs. Wells and the notes was simply this: "Mrs. Wells executed her promissory notes to the defendant, and the defendant took the notes with the plain understanding that, if possible, he would negotiate them, by endorsing them and by running them through his business, when and as he was able, and when and as he was able would account to Mrs. Wells for the proceeds of such negotiation in money." And he contends that there was no evidence to prove, or tending to prove, any other relations, and argued with great force and plausibility that such relation of Foster towards Mrs. Wells and the notes was not an agency. It may be true that the acceptance by Foster of the notes in question with the understanding that he would use or turn them in his business, would not have made him the agent of Mrs. Wells, within the meaning of the statute, in respect to the notes, or any part thereof, so used; and if that were the only testimony which it was competent for the jury to consider relative to the question of agency within the terms of the statute, the contention of counsel might be tenable. But were there any other facts and circumstances disclosed by the evidence which tended to show that Foster was such agent, or from which it was competent for the jury to fairly infer such a relation? If there were, then the Court was bound to submit the question to the jury, under proper instructions, and could not grant

the motion to peremptorily instruct the jury to render a verdict of not guilty. It appears from the evidence produced by the State that Foster knew that Mrs. Wells was in need of money; that he accepted the notes made by her and agreed to raise the money, if he could, for her; that he should receive a very large commission or compensation for his services, to wit, almost twenty per cent; and that when he should negotiate the notes, he would turn the proceeds over to Ramsberger for Mrs. Wells. Ramsberger testified that Foster agreed to do this, and it is quite possible that the jury might have believed from all those facts and circumstances, and we think properly so, that Foster, when he received from Wickersham the sum of $116.32 on the $240 note, received that sum as the agent of Mrs. Wells; and that he was bound to account to her for it in a reasonable time; or to express it differently, the jury might have found that Foster was required to pay over the specific proceeds which he received on the note from Wickersham, within a reasonable time, and that he had no authority under the terms of his agreement made with Mrs. Wells through Ramsberger to mingle the same with his own funds, or to convert them to his own use. And it not appearing by the testimony of any of the witnesses that Foster did more than pay over a part of the proceeds of the note paid to him by Wickersham, the jury must have found that he fraudulently converted, at least, a part of the money so received by him. It was quite possible for the jury to conclude that that sum— the amount paid by Wickersham—was not raised, nor the note to that extent used, by Foster in his business, but that it was procured by him as the agent of Mrs. Wells, under the extrinsic agreement by which he had been trusted with the possession of the notes for the purpose of negotiation for her use and benefit and not his, regardless of that portion of the proceeds of the note which it may be said he turned in his business.

We may say that it has been held in many well considered cases that an agreement to pay commissions is a fact of great weight tending to prove the existence of the relation of principal and agent.

*Rex vs. Mayle, 11 Cox Cr. Cas., 150 ; Regina vs. Batty, 2 Moody Cr. Cas., 257 ; Regina vs. Hoare, 1 Fost and F., 647 ; Rex vs. Tyree, L. R., 1 Cr. Cas., 177 ; S. C. 11 Cox, Cr. Cas., 241.*

We think that from all the facts and circumstances proved in the case, it might be fairly inferred that Foster sustained towards Mrs. Wells, at least as to the money paid to him by Wickersham, the relation of an agent within the contemplation of the statute of this State against embezzlement; and accordingly we hold that the Court did not err in refusing the peremptory instructions asked for.

As to the other exceptions filed in the case, and not already passed upon, we will only say that we have carefully considered all of them and fail to find any error that would warrant this Court in reversing the judgment of the Court below.

We, therefore, overrule all the exceptions and affirm the judgment.