# DUNCAN COTTON OIL CO. v. COX.

No. 3270.  Opinion Filed January 19, 1914.

Rehearing Denied March 10, 1914.

(139 Pac. 270.)

1.  **MASTER AND SERVANT—Death of Servant—Petition—Sufficiency.**  In an action for death by wrongful act prosecuted by an administrator for the benefit of the surviving widow and next of kin, where the answer is a general denial and a plea of contributory negligence and assumption of risk, and the petition charges certain specific acts of negligence on the part of the defendant, as the proximate cause of the action resulting in the death of the deceased, it is not error to overrule a general demurrer to the petition, even though it may contain statements from which the negligence of the deceased might be inferred.

2.  **TRIAL—Direction of Verdict—Evidence.**  A motion by the defendant for a directed verdict at the close of the plaintiff's evidence presents to the trial court the question whether, admitting the truth of the evidence which has been given in favor of the plaintiff, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith.  Where the evidence is conflicting, and the court is asked to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration, and totally disregarded, leaving for consideration that evidence which is favorable to the party against whom the motion is leveled.  If, upon such consideration, there appears to be sufficient evidence to support a verdict for the plaintiff, it is not error to overrule the motion to direct a verdict for the defendant.

3.  **TRIAL—Exception to Instruction—Sufficiency.**  An exception to a written instruction taken in the following form: "The defendant excepts generally and specially to each and every instruction to the jury"—is too general and not a sufficient exception under section 5003, Rev. Laws 1910, to bring before this court for review any particular instruction.

(Syllabus by Galbraith, C.)

*Error from District Court, Stephens County;*
*Frank M. Bailey, Judge.*

Action by Horace J. Cox, administrator, against the Duncan Cotton Oil Company.  Judgment for plaintiff, and defendant brings error.  Affirmed.

*Gilbert & Bond,* for plaintiff in error.

*T. B. Reeder* and *Cruce, Cruce & Cruce,* for defendant in error.

Opinion by GALBRAITH, C. Horace J. Cox, as administrator of Thos. C. Cox, commenced this action in the district court of Stephens county, Okla., against the Duncan Cotton Oil Company, to recover damages for the death of Thos. C. Cox, for the benefit of the surviving widow and next of kin.

The petition charged, in brief, that the defendant was engaged in operating a cotton seed oil mill at the city of Duncan, and employed one Thos. C. Cox as helper to one Jacobis, a skilled machinist in defendant's employ; that Cox was a green, country boy, inexperienced in the use of machinery, and unacquainted with the dangers incident to the operation of machinery in a cotton seed oil mill; that Cox's work had been as a helper to Jacobis in the repair of certain machinery in the mill, and he had been so employed some three months prior to his death; that the superintendent of the mill directed Jacobis to take his helper and to go and adjust and start to running the hull conveyer; that, after the hull conveyer had been adjusted and placed in condition to start running, Jacobis and Cox started up to the main shaft, located near the roof of the building, the hull conveyer being operated by means of a pulley attached to and extending out from the box in which the conveyer was located, and a six-inch belt extending from this pulley to the main shaft near the roof of the building; that Cox was in the lead, and Jacobis said to him, "Tom, you had better let me put that belt on;" and Cox replied, "I will do it;" that Jacobis remained down by the hull conveyer, put the belt on the pulley attached thereto, and Cox proceeded up a ladder to the main shaft and put the belt on the pulley thereon; that this was dangerous work and Cox was unacquainted with the dangers incident thereto; that he was not warned or cautioned in regard to such dangers; that in the discharge of such duty, and without fault on his part, the belt slipped off the pulley on the main shaft and was pulled off the pulley attached to the hull conveyer, and the main shaft,

making many revolutions per minute, carried this belt around and wrapped around Cox's legs and feet, and he was carried around the main shaft and bound thereto, and thereby lost his life. It was also alleged that Cox was a young man, in good health, 25 years old, of good habits, and earning $1.50 per day at the time of his death, and was survived by a widow and next of kin, naming them.

The defendant interposed a general demurrer to the petition, which was overruled, and exceptions saved, and then answered by general denial, pleading contributory negligence, and assumption of risk. After the testimony of the plaintiff had been introduced, the defendant moved for an instructed verdict. This motion being overruled, the defendant refused to offer any testimony, and the jury were instructed as to the law, the cause argued and submitted, and a verdict returned for the plaintiff in the sum of $4,000. The exceptions saved at the trial were set out in a motion for new trial, which was overruled, and exceptions taken, and appeal perfected to this court.

First. It is insisted that the court erred in overruling the demurrer to the petition, inasmuch as it is claimed that it appeared from the allegations therein that the deceased was guilty of contributory negligence. Even if this were true, we cannot hold that the court was in error in its ruling on the demurrer, since the petition clearly charged negligence on the part of the defendant, and, under the Constitution and law of this state, the questions of·the assumption of risk and contributory negligence are questions that must be submitted to the jury for determination, and the trial court properly so held in this case.

Second. It is again urged that the court should have instructed the jury to return a verdict for the defendant.

It appears from the evidence: That the deceased, Thos. C. Cox, was a man some 25 years of age, and was, by occupation, a farmer. That some three or four months prior to his death he was employed by the defendant company as a helper to D. W. Jacobis, an experienced machinist, and he worked about the mill putting in steam, water pipes, and hydraulic pipings. That the superintendent of the defendant company, at that time, was one

F. A. Stone. That on the morning of the day of the accident the superintendent directed Jacobis to take his helper, the deceased, and put the hull conveyer in shape and start it to running. That the mill was operated by power furnished by an engine, and the power was distributed to the different portions of the mill by means of shafts and pulleys. The main shaft was 80 or 90 feet long and extended up near the roof of the building in which the mill was located, and on this main shaft, at different intervals where necessary, were constructed pulleys on which were placed belts extending to different parts of the building where the power was applied to various machinery. That the hull conveyer was operated by means of a belt placed on the main shaft near the roof of the building extending down to a pulley extending out from the box in which the hull conveyer was operated and attached to the conveyer, and that this pulley was six inches in length for a six-inch belt. That there were two pulleys on the main shaft in the top of the building some five inches apart, on one of which the six-inch belt that operated the hull conveyer was placed. That the running board placed along the main shaft on which the employee was expected to stand when placing the belt on the pulley was built about even with the box in which the main shaft was operated, and within four or five feet of the roof of the building. That, when Jacobis and his helper had adjusted the seed conveyer and placed it in alignment and ready to start it running, he and Cox started toward the main shaft, and Cox was in the lead, when Jacobis said to him, "Tom, you had better let me put that belt on;" and Cox replied, "No, I'll do it;" and proceeded up to the main shaft, and sat down on the running board and allowed his feet to hang down in the direction that the belt extended going to the seed conveyer. That, when the belt was put on the pulley of the main shaft, it slipped off and ran between that and another pulley on the shaft, and, the space between the pulleys not being as wide as the belt, the belt was crumpled, which caused it to pull off the pulley attached to the hull conveyer, and the main shaft, revolving very rapidly, carried the belt around it, and in

swinging around the main shaft this belt caught Cox's feet and wound him around the main shaft, causing his death.

The testimony shows that the construction of the running board along this main shaft was such that a person, attempting to put a belt on as the deceased attempted to do, was compelled to either sit down on the running board and allow his feet to hang down below, or to stand up with his feet on the running board, and bend over working with his hands on a level with his feet, and in this last attitude the worker was in imminent danger of losing his balance and falling off, and that really the safer course was followed by Cox in sitting down on the running board; that the space between the pulleys on the main shaft, being less than six inches, was a faulty construction, since, if the space between the two pulleys on the main shaft had been as wide or wider than the belt when it slipped off the pulley to the shaft, it would not have crumpled and would not have pulled off the pulley attached to the conveyer, and the accident would not have happened.

The negligence charged in the petition was in the faulty construction of this running board; that it was built too near the roof and put on a level with the main shaft, while it should have been constructed three or four feet below the main shaft, so that the employee could have stood with his feet on the running board and put the belt on the pulley without danger of falling. And, again, in the faulty construction of the two pulleys on the main shaft in placing them at a less distance apart than the width of the belt intended to run thereon. And, again, in sending the deceased to perform a dangerous task, knowing that he was unacquainted with the dangers incident to the performance of the act he was directed to perform, without caution or warning of any kind. The evidence tends to support each of these charges of negligence on the part of the defendant, and was ample to take them to the jury. The testimony properly raised the question as to whether or not the master had used reasonable care in providing a safe place for the employee to work, and there was no pretense that the employee had been warned of the dangers incident to the work that he was directed to do. The rule

on this question is well stated by Mr. Justice Turner, speaking for the court in the case of *Schoner v. Allen,* 25 Okla. 22, at 25, 105 Pac. 191, at 192, where it is said:

"It is well settled that where the master knows the employment is dangerous, and also knows that the servant is ignorant and inexperienced in the employment, and has no knowledge of the dangers incident thereto, it is the duty of the master to warn the servant of the danger and instruct him to avoid it. If the failure to perform such duty resulted in injury to the servant, the master is liable. Even where the danger is patent and open to observation, it is the duty of the master to warn and instruct the servant in regard to it, if through inexperience, or from any cause whatever, the servant is unable to understand fully and appreciate the nature and extent of said danger."

The rule in this jurisdiction on a motion for a directed verdict, as announced by the Supreme Court in *Solts v. Southwestern Cotton Oil Co.,* 28 Okla. 706, 115 Pac. 776, is as follows:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith. Where the evidence is conflicting, and the court is asked to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration and totally disregarded, leaving for consideration that evidence which is favorable to the party against whom the motion is leveled."

Applying this rule to the facts established by the plaintiff's evidence, we are inclined to the opinion that the evidence submitted clearly tended to sustain each of the acts of negligence charged in the petition against the defendant, and that it was not error for the court to deny the motion for a directed verdict for the defendant.

A large part of the brief of the plaintiff in error is taken up in discussing certain instructions of the trial court to the jury. The exception to the instructions of the court reads as follows:

"Thereupon the court read his instructions to the jury. Mr. Gilbert: The defendant excepts generally and specially to each and every paragraph of the court's instruction to the jury. Mr. Gilbert: We except to the action of the court in refusing to give two instructions requested by the defendant."

This exception was not sufficient to bring before this court for review the instructions complained of. The instructions were in writing, and, if counsel wished to except to any one of them, it was his duty to except to that particular instruction, and thus call the attention of the trial court to it in order that the trial court might consider his objection and correct the error, if any, or at least be given an opportunity to do so. The proceeding for saving exceptions to instructions is plainly prescribed by section 5003, Rev. Laws 1910. See, also, *Eisminger v. Beman*, 32 Okla. 818, 124 Pac. 289, for a discussion of the application of this statute. The instructions of the court to the jury fairly stated the law of the case under the issues involved in the cause, and, since no proper exceptions were saved to any particular instruction, we decline to consider any of those discussed in the brief.

It is also complained that the court erred in admitting and excluding certain testimony. We have carefully examined these exceptions and are clearly convinced that they are without merit.

Upon a consideration of the whole record, we find that the judgment appealed from should be affirmed.

By the Court: It is so ordered.