## GREAT SOUTHERN LIFE INS. CO. v. LONG et al.

No. 12372—Opinion Filed Oct. 30, 1923.

1. **Trial — Directing Verdict — Effect of Motion.**

The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party

against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough evidence to reasonably sustain a verdict, should the jury find in accordance therewith.

**2.    Same.**

If the inference to be drawn from the evidence is a reasonable one, although not a necessary one, the court will not invade the province of the jury by taking from it the right to pass on the facts to be deduced from such inference.

**3.    Appeal and Error — Questions of Fact —Verdict.**

Where the evidence is in conflict, and there is evidence which reasonably tends to support the verdict, and the jury is properly instructed, and the verdict approved by the trial court, this court will not disturb the verdict.

**4.    Principal and Surety — Exoneration of Sureties — Notice of Principal's Default.**

Where an agent, who has given a bond with sureties to secure the payment to his employer of premiums collected by him as such agent, appropriates the premiums collected by him as such agent to his own use and benefit, such agent is guilty of the offense of embezzlement, which involves moral turpitude, and where the employer, after knowledge of such embezzlements on the part of such agent, continues such agent in its employ and does not notify the sureties on said bond of such wrongful act, the sureties are exonerated from liability for all premiums collected by such agent after knowledge of such wrongdoing of the agent came to the employer.

· (Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Kiowa County; Thomas A. Edwards, Judge.

Action by Great Southern Life Insurance Company against John J. Long, A. B. Johnson, and H. C. Lloyd, defendants. Judgment for defendants, and plaintiff appeals. Affirmed.

Rummons & Hughes, for plaintiff in error.

Geo. L. Zink, for defendants in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Kiowa county, Okla., on the 2nd day of September, 1916, by the Great Southern Life Insurance Company, a corporation, plaintiff in error, as plaintiff, against John J. Long, A. B. Johnson, and H. C. Lloyd, defendants in error, as defendants, for the sum of $406.52, with interest thereon at five per cent. per annum from Sep-

tember 26, 1913, and for the further sum of $40.65 as attorney fees, and costs, for an alleged liability of defendants in error as sureties upon the bond of an insurance agent in the employ of the plaintiff in error.

For convenience we shall hereafter refer to the parties as plaintiff and defendants, as they appeared in the court below.

Petition alleges that R. P. Warwick, on the 23rd day of April, 1912, entered into a written contract with plaintiff by the terms of which the said Warwick was appointed soliciting agent to procure applications for insurance on the lives of individuals for the plaintiff, Great Southern Life Insurance Company, and for collecting premiums due for the first year on policies of insurance written by said company to applicants, furnished by said agent and his subagents, and to transmit such premiums to plaintiff, but that if authorized in writing, the agent was permitted to retain his commissions, and unless such authorization was made by plaintiff to said agent he was to transmit to plaintiff and pay over all monies received by him and deliver to plaintiff all notes taken, for premuims on life insurance and faithfully discharge his duties and obligations as agent, according to the terms and conditions of this appointment, and for the faithful discharge of the above conditions of the contract the sureties obligated themselves, by the terms of the bond sued upon, to the plaintiff insurance company, that they should pay any shortages to the plaintiff due plaintiff from said agent.

Said petition further alleges that under the contract and bond the said R. P. Warwick, as agent, commenced to perform services for it on the 23rd day of April, 1912, and continued in its employ as such agent until the 26th day of September, 1913, and that during said period the said Warwick collected premiums on insurance, belonging to plaintiff, and failed to remit same to plaintiff, as required by the terms of said agency contract, and by reason thereof became indebted to plaintiff in the sum of $406.52; that because of said failure to remit, the terms of the contract of agency and of said bond, given to secure the performance of same, were broken on part of the said Warwick, and the defendants, as sureties upon the bond, became liable to plaintiff, under the terms of said bond, in the said sum of $406.52, with interest thereon at the rate of five per cent. per annum from September 26, 1913, and for ten per cent. attorney fees, and the costs of this action.

To the petition are attached copies of the contract, bond, and statement of the account, marked "Exhibits A," "X," and "Z."

To the above petition defendants answered, alleging, among other things, that they were exonerated from liability by reason of the fact that the agent, the principal of the bond, had wrongfully appropriated the monies and notes taken by him on the sale of insurance and paid to him as premiums thereon, and which wrongful appropriation of monies and notes was such that the agent was guilty of embezzlement, which embezzlements began immediately after the execution and delivery of the bond, and that such embezzlements were continuous, and that the initial embezzlement and continuous embezzlements thereafter were known to plaintiff at about the time such embezzlements occurred, and that plaintiff continued such agent in its employ and did not notify the sureties on the bond of such wrongful acts until long after the termination of the contracts of agency between plaintiff and Warwick, and that the pretended account, for which liability is sought to be charged against the defendants, consists in the main of items of wrongful misappropriations, unlawful conversion, and embezzlements, upon the part of said agent, Warwick, of plaintiff's property and funds, known at the time by plaintiff and acquiesced in by plaintiff, and being unknown to defendants, and of which they had no notice or knowledge until after the termination of said contract between plaintiff and Warwick, and asked that they be discharged from any and all liabilities to plaintiff, under and by virtue of the bond sued on, and that plaintiff take nothing by reason of the action, and that they be discharged with their costs.

Plaintiff filed a general denial to the above answer by way of reply.

The plaintiff introduced in evidence the contract, bond, and account of plaintiff, the account setting out in detail the business transacted by plaintiff between the 16th day of May, 1912, and the 26th day of September, 1913, and rested.

The defendants John J. Long and H. C. Lloyd testified that they never had any notice from the company of the shortages on part of R. P. Warwick during the time that Warwick was acting as agent for the company, and had no knowledge of said shortages until about the time this action was brought.

The witness C. A. Starns testified that he took out a policy with the company through its agent, R. P. Warwick, and was uncertain about the date, whether it was 1910 or 1912, and the account of plaintiff in evidence was presented to this witness, showing a premium of $39.40, and he testified that was the only policy he ever took out with the company and that he paid said premium by crediting Warwick on a grocery bill that the agent Warwick owed him of $38 or $39, for which the said Warwick issued him a receipt for the payment of the premium on the policy.

The witness, R. C. Blackmer, testified that he took out a policy through the agent, R. P. Warwick, with the plaintiff company sometime during the year 1912, and paid the premium thereon by delivering a promissory note to R. P. Warwick, and that he purchased said note back from the said R. P. Warwick at a discount of 30 per cent.

This was all of the evidence in the case, and the attorneys for both plaintiff and defendants practically agree that there is no conflict whatever in the evidence.

The case was tried to a jury, and the jury returned a general verdict in favor of the defendants.

Motion for new trial was filed by the plaintiff and overruled by the court; exceptions reserved and judgment was rendered upon said verdict against the plaintiff and in favor of the defendants on the 17th day of December, 1920, and the cause comes regularly on appeal by plaintiff to this court.

The attorneys for plaintiff in error set out six assignments of error in their brief, but content themselves in their argument in presenting them under three heads: First, that no competent evidence whatever was offered to establish the defense set up in defendants' answer; second, error of the court in giving instruction No. 3 to the jury; and, third, error of the court in refusing to instruct the jury to return a verdict in favor of the plaintiff. The other assignments of error, not argued in the brief of plaintiff, will be regarded as waived and will not be considered by this court upon the authority of Bartlesville Zinc Co. v. James, 66 Okla. 24, 116 Pac. 1054.

Upon examination of the record we find, under the eighth paragraph of the contract between the plaintiff and its agent, the following stipulation and agreement:

"Second party may deduct his commissions due and computed under schedule above set out at the time of payment of

first-year premium, remitting the remainder to first party, when authorized by the first party in writing so to do; otherwise the entire amount of all premiums shall be remitted to the home office of first party. First party shall have the right to apply the commissions due under such premiums so transmitted to the liquidation of any indebtedness due or owing to first party by second party."

The contract, bond, and account being the basis of this action, it was the duty, in our view of the case, of the plaintiff company to show, by the evidence, that the right of the agent, R. P. Warwick, to retain his commissions out of the premiums had been granted to him in writing, but the plain letter of the contract, even if such written authority had been given him, required the agent to remit the remainder to the plaintiff, and upon the examination of the account, attached to the petition and introduced in evidence, we find on the books of the company that he was debited on May 16, 1912, with $98.08; on June 21st, he was short 50; on July 15th, he was debited with $54.86 and $44.30; on July 25th with $48.34; August 10th with $38.42; on August 13th he was credited with $85 and $10.47; on August 12th he was short $1; on August 15th he was credited with $65; on August 22nd he was debited with $79.40; on September 6th he was credited with $25; on September 12th he was credited by commission with $17.52; and then follows seventeen debits, varying in amounts from $62.92 to $7.13; on October 7th he was credited with commission of $11.89 and on October 25th he was debited with $9.59; on November 4th, he was credited with $13.28; November 13th, $20.39; and December 31st, $16.17; on March 4th, 1923, he was debited $7.54; on March 7th he was credited by commissions on six items, totaling $114.01. Then follows a long list of debits and four small credits. The total amount of all debits between April 23, 1912, and September 18, 1913, is $945.50, and the total amount of credits deducted from the total amount of debits leaves a balance due from the agent to the plaintiff company of $406.42. This showing of the state of the account between the plaintiff and its agent was made by the plaintiff in its own evidence and in its exhibit. In the debits, that make up the total sum, is found a debit against the agent for the premium on the C. A. Starns policy for the amount of $39.04, which Starns testified he paid by crediting him with a grocery bill incurred by the agent, R. P. Warwick. In the list of debits there also occurs the debit against the agent Warwick on the premium on the R. C. Blackmer policy of $50.60,

for which Blackmer testified he issued his promissory note to R. P. Warwick and purchased the note back from Warwick at a discount of 30 per cent.

It is thus shown that from the very beginning of the operations of R. P. Warwick, under his contract, he began converting to his own use and benefit the premiums paid upon the policies, secured by him for the plaintiff company, in considerable sums, and such fact must have been within the knowledge of the company, as shown from the entries on its books, beginning May 16, 1912, and continuing all the way through his connection with the company up to and including September 18, 1913. The company must have known that the policies had been issued to the policy holders for the premiums in the amounts shown on its books, and that it was not receiving in accordance with the provisions of the contract, above set forth, remittances from its agent, and that its agent was not only retaining his commission out of the premiums, but was retaining the entire amount, and no other conclusion can be arrived at in face of this record, and, while the plaintiff may not have known directly that its agent was paying his grocery bills out of the premium on the policy issued and discounting the note given for the entire amount of the premium on policy issued, as disclosed in the evidence of Starns and Blackmer, yet, it did have knowledge that these premiums were not remitted to it, and, in our view of the case, it should have ascertained the reason why, and we think the evidence of these two witnesses was admissible to show that its agent, R. P. Warwick, was guilty of embezzlement, under this state of the case. Therefore, on the questions raised by counsel on the refusal of the court to instruct the jury to return a verdict in favor of the plaintiff, and upon the contention that no competent evidence whatever was offered to establish the defense set up in defendants' answer, we cannot agree with counsel for plaintiff as we think that there was sufficient competent evidence in the record, introduced by the plaintiff, itself, to sustain the verdict of the jury and upon which to refuse motion to submit the case to the jury.

The rule established by this court is:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough evidence to reasonably

sustain a verdict, should the jury find in accordance therewith." Solts v. Southwestern Cotton Oil Co., 28 Okla. 706, 115 Pac. 776; Duncan Cotton Oil Co. v. Cox, 41 Okla. 633, 139 Pac. 270; Chestnutt-Gibbons Grocer Co. v. Consumers' Fruit Co., 44 Okla. 318, 144 Pac. 591; Frick-Reid Supply Co. et al. v. Hunter. 47 Okla. 151. 148 Pac. 83; Phoenix Ins. Co. of Hartford v. Newell et al., 60 Okla. 207, 159 Pac. 1127.

"If the inference to be drawn from the evidence is a reasonable one, although not a necessary one, the court will not invade the province of the jury by taking from it the right to pass on the facts to be deduced from such inference." Waters-Pierce Oil Co. v. Deselms, 18 Okla. 107, 89 Pac. 212: Sulzberger & Sons Co. v. Hoover, 46 Okla. 792, 149 Pac. 887.

Having decided that the evidence was sufficient to sustain the contention of defendants and the court was right in submitting the case to the jury upon the record and facts in this case, we are next confronted with the contention of attorneys for plaintiff that the court erred in giving to the jury instruction No. 3, which is as follows:

"You are instructed under the contract herein sued upon the agent Warwick, of the plaintiff Life Insurance Company, was authorized to collect premiums upon policies of life insurance for the first year only, and was authorized, by such contract, in case the company should write him to that effect, to deduct his commissions, which commissions were to be according to a schedule which was included in said contract, and in the event that he was not authorized in writing by the company to deduct such commissions. then he was to remit the entire commission collected to the company. And, you are instructed that any failure on his part to conform to the terms of such contract and to remit either the amount paid as premiums less his commission, or the entire amount unless he was authorized in writing, would constitute embezzlement. and if you find and believe from the evidence that the said Warwick did collect premiums for the first year on said life insurance policies solicited and procured by him and failed to remit to the company its part of the said first year premiums but appropriated the same to his own use and benefit and that the company had knowledge of such appropriation on his part, and continued to retain said Warwick in its employ that any embezzlements or any shortages of the said Warwick after knowledge of any embezzlements by Warwick on the part of the said Life Insurance Company, would not be indemnified by the said bond and the defendants in this case would not be liable for such shortages after the plaintiff company had knowledge of such embezzlements. if any such you find. But would

in any event be liable for shortages occurring prior to knowledge on the part of the plaintiff of embezzlements on the part of said Warwick, if any such you find.".

If this instruction is a proper one, this being the only instruction presented and argued by attorneys for plaintiff in their brief, the verdict and judgment of the court in this cause must be affirmed, as this court will not invade the province of the jury to pass on the facts and the inferences to be drawn from the evidence, as in the case of Bartlesville Zinc .Co. v James, supra, this court lays down the rule that:

"Where the evidence is in conflict, and there is evidence which reasonably tends to support the verdict, and the jury is properly instructed, and the verdict approved by the trial court, this court will not disturb the verdict."

The instruction complained of stated the terms of the contract, that the agent Warwick, in case the company should write to him to that effect, could deduct his commission for the first year only, but, if he had no written authority to deduct his commissions, he should remit the entire premiums collected to the company, and that if he retained the commissions and premiums, and did not remit either the amount paid as premiums, less his commissions, or the entire amount, unless he was authorized in writing, would constitute embezzlement, and if he appropriated the same to his own use and benefit, and the company had knowledge of such appropriation on his part and continued to retain said agent, Warwick, in its employ, that any embezzlements or any shortages of the said Warwick after knowledge of any embezzlements by him, on the part of the said life insurance company, would not be indemnified by said bond and the defendants in this case would not be liable for such shortages after plaintiff company had knowledge of such embezzlements, but that the defendants would be liable for shortages occurring prior to the knowledge on part of the plaintiff of embezzlements on part of said Warwick. We think this instruction presents the law correctly. as measured by the rule of this court as laid down in the case of Phoenix Insurance Company of Hartford v. Newell et al., 60 Okla. 207, 159 Pac. 1127, based upon the facts and records in this case.

In the case above referred to, the plaintiff sued its agent. D. M. Newell, and his bondsmen for monies collected by him as agent that he had not accounted for, and it was shown that the agent Newell used the company's money, took goods from

merchants in payment of premiums; that he checked it out and would pay the balance when he could and that Newell told the investigating agent of the plaintiff of these facts and that plaintiff did not notify the sureties of the default of Newell, and after having knowledge of said default continued said Newell in its employ, and the court submitted an instruction to the jury very similar to the one complained of in this case except in the instruction given in that case the court included in the instruction the question of whether the shortage resulted from dishonest practices or intentions, and reviewed the statute of embezzlement of this state, which is as follows:

"If any clerk or servant of any private person or copartnership or corporation, except apprentices and persons within the age of 18 years, fraudulently appropriates to his own use, or secretes with a fraudulent intent to appropriate to his own use, any property of any other person which has come into his control, or care by virtue of his employment as such clerk or servant, he is guilty of embezzlement." Section 2675, Rev. Laws 1910.

In the instruction complained of, in the instant case, the court instructed the jury that if they found the agent was guilty of embezzlement and plaintiff had knowledge of this fact and still retained him in its employ after knowledge of such fact, then the sureties would not be liable for any shortages occurring thereafter.

The question here is whether said agent was guilty of moral turpitude in appropriating to his own use the monies that came into his hands by virtue of his employment as agent of the obligee on the bond. We are of the opinion that this question must be answered in the affirmative. The evidence here is that he used the money, collected by him as agent, to pay a grocery bill and obtained money by discounting one of the premium notes and used the same for his own benefit, and in our view of the case he was guilty of embezzlement.

The court, in the case above referred to, uses this language:

"That the obligee in the bond, after having knowledge of the wrongdoing of the agent, continued to employ said agent, and that the agent continued to collect premiums, and that the obligee in the bond did not advise the sureties of the wrongdoing of the agent, and that the moneys sought to be collected in this action were collected by the agent after the knowledge came to the obligee in the bond of the appropriation of money of the obligee by the agent, though the evidence is in part in conflict, the preponderance thereof is sufficient to authorize the jury to answer the said questions in the affirmative. Where the evidence, though in conflict, reasonably supports the verdict rendered, that this court will not disturb the verdict is so well established as not to require the citation of authorities in support thereof.

"There is no evidence as to whether or not a part of the premiums collected belonged to the agent as his compensation; but, if it be admitted that such is the case, if he converted the whole fund to his own use, he is guilty of embezzlement. Wallis v. State, 54 Ark. 611, 16 S. W. 821; Territory v. Meyer, 3 Ariz. 199, 24 Pac. 183; State v. Collins, 1 Marv. (Del.) 536, 41 Atl. 144; Foster v. State, 2 Pennewill (Del.) 111, 43 Atl. 265; Clark v. Com., 97 Ky. 76, 29 S. W. 973; Com. v. Fisher, 113 Ky. 491, 68 S. W. 855; Com. v. Smith, 129 Mass. 104; People v. Hanaw, 107 Mich. 337, 65 N. W. 231; Campbell v. State, 35 Ohio St. 70; People v. Civille, 44 Hun (N. Y.) 497."

And measured by this rule, we are of the opinion that the instruction given, based upon the evidence and record in the instant case, was correct, as there was no evidence introduced to show any reason or excuse for the agent appropriating the premiums to his own use and benefit and not remitting the premiums collected, in accordance with the plain provisions of the contract, to the plaintiff. In the absence of any reason or excuse for not so doing, we are forced to conclude, measured by the standard established by the decisions of this state, that the case was fairly submitted to the jury under proper instructions, and that the verdict of the jury is correct, and that the judgment pronounced upon the verdict of the jury should be and is hereby affirmed.

By the Court: It is so ordered.