## SPARKMAN et al. v. W. T. RAWLEIGH MEDICAL CO.

No. 14284—Opinion Filed Dec. 11, 1923.

Rehearing Denied Feb. 12, 1924.

1. **Principal and Surety—Liability on Bond of Salesman for Medicine Company.**

This case involves the construction of a written contract between the manufactur-

er of patent medicines and kindred products, and its agent, for the sale of its products as an itinerant vendor; more particularly the liability of the sureties on a bond given by the agent for the faithful performance of the conditions of the sales contract. The contract did not specify the quantity of goods that would be delivered to the agent for sale in the territory assigned to him, nor the extent of credit, or value thereof, that would be extended to the agent in the course of the business, if any. The contract was to be in effect for the period of one year, subject, however, to terminate at the will of the plaintiff.

**2.   Same—Implied Obligations of Obligee.**

The implied obligations of the plaintiff were that it would furnish such amount of goods to the agent for the commencement of the sales of the products in his territory and such quantity of goods from time to time as were reasonably required by the ordinary and usual requirements of such business; and—

**3.   Same.**

That the principal would extend to its agent such line of credit in the conduct of the business as a reasonably prudent business man would have done in the protection and care of his own property interests, taking into consideration the nature of the business, the needs of the agent, and his willingness and financial ability to pay his obligations.

**4.   Same—Liability of Sureties—Jury Questions.**

The sureties are only liable for the indebtedness incurred by the agent within the express and implied provisions of the contract. It is a question of fact for the jury to determine whether or not, by the express and implied provisions of the contract, any part or all of the indebtedness was incurred within the terms of the contract.

**5.   Same—Rights of Sureties — Limited Credit to Agent and Notice of Default.**

By the express and implied provisions of the contract, in the nature of the business assigned to the agent, in relation to the right of the sureties, who were known to the principal to have executed the instrument for the accommodation of the agent, it was the legal duty of the plaintiff to furnish to its agent for the commencement and continuance of the business only such quantity of its products as were reasonably required, and to extend to the agent only such lines of credit in the conduct of the business as a reasonably prudent man, knowing the financial responsibility of the agent, would have extended in the management and care of his own business interests. If the agent made defaults, if any, in meeting the payment of the credit or credits first extended to him, it was the duty of the plaintiff to notify the sureties of the defaults.

**6.   Same — Jury Question — Erroneous Direction of Verdict.**

Record examined; held, the question of the liability of the sureties on the bond was a question of fact for submission to the jury in this cause; further held, it was reversible error to instruct the jury to return a verdict for the plaintiff.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Garvin County; A. C. Barrett, Judge.

Action by W. T. Rawleigh Company against T. L. Sparkman et al., as principal and sureties on bond. Judgment on instructed verdict for plaintiff. Defendants bring error. Affirmed as to T. L. Sparkman, principal on bond, and reversed and remanded as to sureties.

Cicero I. Murray, for plaintiffs in error.

Bowling & Farmer, for defendant in error.

Opinion by STEPHENSON, C. The W. T. Rawleigh Company is a manufacturer and general vendor of patent medicines and kindred products through its agents. About September 19, 1919, the plaintiff entered into a written contract with T. L. Sparkman as its agent for the sale of its patent medicines and products in a house to house canvas through the rural districts. The ordinary and usual manner of making such sales is for the agent to take a small quantity of the plaintiff's products in a vehicle and make a trip through the rural districts in the sale of the merchandise, and replenish the supply from time to time as the demands for the same arise in the ordinary and usual course of the business. The contract provided, in substance: (1) That it should continue in effect until December 31, 1920; (2) the contract might be terminated at the will of the seller; (3) the kind and quantity of the products to be sold to the agent were optional with the seller; (4) the agent should pay cash for the products or by "installment payments satisfactory to the seller".

It will be observed that the contract fails to make the following provisions: (1) The quantity of medicine and kindred products to be sold by the agent: (2) no definite period of time for which the contract is to apply: (3) the manner and time of payment for the products by the agent.

In relation to those terms not covered by the contract the law will imply that principal in dealing therewith, with his agent, will use that degree of care for the protec-

tion and preservation of his own property rights, that an ordinarily prudent man would apply in relation to his own business. In relation to the following matters, the provisions of the contract left the following to be determined and fixed by the plaintiff: (1) The quantity of products that would be sold and delivered to its agent in the course of the latter's performance of his duties for the principal; (2) the extent of credit that the seller would grant his agent in the course of his business. In relation to these matters the law implies that the plaintiff would ship that quantity of its patent medicines and kindred products to its agent in the commencement of the performance of his duties, which would be reasonably required to enable the commencement of his services; (2) that the principal would exercise that degree of care that an ordinarily prudent man would exercise in relation to his own property interests in fixing and granting the line of credit required in the agent's conduct of the business. The agent executed his bond conditioned for the faithful performance of his duties under the express and implied provisions of the contract, and J. W. Cates, L. A. Howell, and J. P. Duncan became sureties thereon. The liability of the sureties is fixed by the express and implied provisions of the contract. Beyond the scope of such provisions, the sureties are not bound. The contract continued in force until about September 1, 1920, at which time an indebtedness of $822.87 had accrued in favor of the principal. The plaintiff then terminated the contract and commenced its suit against the agent and sureties for the amount of the indebtedness then owing. In the trial of the cause the court instructed a verdict in favor of the plaintiff and against the principal and sureties on the bond for the sum sued for, over the objection and exception of the defendants. The defendants then appealed the cause to this court and among the several errors assigned as grounds for reversal is, that the trial court committed error in its instructed verdict in favor of the plaintiff and against the defendants. In the course of the trial one of the officers of the plaintiff company testified in part as follows:

Q. "State whether or not the plaintiff company sold goods and charged them to the account of the defendant T. L. Sparkman, relying upon the guaranty signed by the defendants, T. W. Cates, L. O. Howell, and J. P. Duncan? A. We did. Mr. Sparkman was not strong financially from our investigation, and we, of course, would not have sold him this amount of goods on time without security. We believed that the de-

fendants, J. W. Cates, L. O. Howell, and J. P. Duncan, were financially responsible and our investigation led us to believe that they were honest and would pay their debts, and relying upon this, we sold Sparkman goods on time."

The witness testified that he made an investigation of the financial ability of its agent to pay and did not find it good. The witness further testified that the company made an investigation of the responsibility of the sureties, and were led to believe that they were honest and would pay their debts, and in fact relied upon the sureties for the payment of the medicine and kindred products shipped to its agent. It is apparent from the record that the medicine company in the relations with its agent proceeded on the theory that under the terms of the contract it might sell any quantity of products to its agent without regard to the needs of the agent in the conduct of the principal's business, and without regard to the nature of credit extended the agent, and at such time as it elected, terminate the contract and hold the sureties for any unpaid balances. The sureties are only bound for the obligation of the plaintiff's agent arising within the scope of the express and implied provisions of the contract. Dolese Bros. Co. v. Chaney and Richard, 44 Okla. 745, 145 Pac. 1119. The plaintiff has attached a copy of the account which shows the first item charged to the agent in the sum of $716.20, on September 22, 1919. On November 10th, the agent is credited by a remittance of $35, and on the 15th day of November there is a charge item of $82.30. Then following are similar credits, and on December 8th, the agent is charged with another shipment of goods in the sum of $116.40. The sales to the agent are very disproportionate to the remittances received from the agent, when considered in the light of plaintiff's testimony that it did not consider the agent financially responsible. An implied obligation under the contract rested on plaintiff to provide its agent in the commencement of his business for the principal only such products as were reasonably required in the ordinary needs of an itinerant vendor of such products, and to make such future provisions as the reasonable needs of the agent required. In extending credit to the agent, if the plaintiff so elected to do, under the obligations owing by the plaintiff to the sureties, it was the duty of the plaintiff to exercise that degree of care in granting a line of credit as would ordinarily be granted by a business person in the care of his own property rights. These matters are not covered by the express provisions of the contract and the law implies that the plain-

tiff will use that degree of care and fairness towards its sureties, as it would expect at their hands. If the plaintiff granted credit to its agent in the first instance, and default in payment followed, and the agent made such remittances as would put the plaintiff on notice that the agent would not likely meet future payments, it was the duty of the medicine company to notify the sureties of such condition before making future advancements. A breach in either or any of the foregoing conditions would relieve the sureties of liability on the bond. The liability of the sureties on the bond must arise within the express and implied provisions of the contract. The evidence in this case was sufficient to constitute a question of fact to go to the jury, and it was error therefore to instruct a verdict for the plaintiff. The record in this case brings it within the rules applied in the cases of Great Southern Life Insurance Co. v. John J. Long et al., 93 Okla. 129, 219 Pac. 926; Phoenix Insurance Co. of Hartford v. Newell, 60 Okla. 207, 159 Pac. 1127; Chicago Crayon Co. v. Rogers, 30 Okla. 299, 119 Pac. 630; Guardian Fire and Life Assurance Co. v. Thompson et al. (Cal.) 9 Pac. 1. The cases cited apply the rule that where knowledge of embezzlement by the agent is brought home to the principal, it is the duty of the latter to notify the sureties on the bond, and a failure to so do after acquiring such knowledge, releases the sureties. This rule of law rests upon the supposition that a reasonably prudent business man in the conduct of his ordinary business affairs would not continue an agent in his employ after knowledge of the agent's embezzlement had come to his attention. The cases apply the principle that the employer cannot hold the sureties for loss which the employer might have discovered or avoided by that degree of care which a reasonably prudent business man applies in the conduct of his own business affairs. The plaintiff in this case, on the record, comes within the scope of the same principle. It is for the jury to say in this case whether an ordinarily prudent business man in the protection of his own property rights would have continued Sparkman in its employ and extended to him the line of credit given. Such credit, if any, extended beyond the scope of the exercise of such care, is not the liability of the sureties.

The conclusion reached in this case follows from the nature of the business, the failure of the contract to cover certain provisions, the relation between the principal and agent, and the testimony of the officer of the company in relation to his knowledge of the agent's responsibility.

Therefore it is recommended that this cause be affirmed as to the agent, Sparkman, and reversed and remanded as to the defendants, J. W. Cates, L. O. Howell, and J. P. Duncan, sureties on the bond, for further proceedings in accord with the opinion expressed herein.

By the Court: It is so ordered.