## GORDON et al. v. W. T. RAWLEIGH CO.

No. 14285—Opinion Filed April 13, 1926.

Rehearing Denied April 27, 1926.

1. **Monopolies—Restraint of Trade—Validity of Contract Between Manufacturer and Retailer.**

A contract between a manufacturer of goods and a retailer, under which the goods were sold and delivered f. o. b. the point of manufacture and which permitted the retailer to sell the goods where and in the manner and for what he pleased, held not void as in restraint of trade.

2. **Guaranty — Invalidity of Contract as Defense by Guarantors.**

The burden of proving the invalidity of a contract, performance of which was guaranteed by certain defendants, as an affirmative defense, rests upon defendants asserting same.

### 3. Same—Validity of Guaranty as to Past and Future Transactions.

Where a guaranty expressly covers past and future transactions and is supported by a consideration arising out of the future transactions, it is good as to the whole.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Garvin County; W. L. Eagleton, Judge.

Action by W. T. Rawleigh Company against I. J. Gordon et al. Judgment for plaintiff, and defendants appeal. Affirmed.

Cicero I. Murray, for plaintiffs in error.

Sam K. Sullivan, R. J. Shive, and Bowling & Farmer, for defendant in error.

Opinion by PINKHAM, C. This action was instituted in the district court of Garvin county by the W. T. Rawleigh Company as plaintiff, against I. J. Gordon, principal, and B. G. Reed, B. M. Luton, and J. H. Gordon, as guarantors on a contract and bond of guaranty made and entered into by I. J. Gordon and the W. T. Rawleigh Company and the said B. G. Reed, B. M. Luton, and J. H. Gordon, who signed the guaranty for the faithful performance of the contract made by said principal, I. J. Gordon, for the purchase of certain goods, wares, and merchandise. The parties will be referred to as they appeared in the trial court.

The petition filed in said cause by the plaintiff alleged that on the 8th day of January, 1920, the defendant I. J. Gordon and the plaintiff entered into a contract, whereby the plaintiff agreed to sell to said defendant at its regular retail prices its goods, wares, and merchandise f. o. b. Freeport, Ill., or at any of its branch houses, or at any other point agreed upon. The contract was for a specified term, but subject to termination before the expiration of the time fixed in the contract by either party upon written notice. It was agreed that upon the termination of the contract by either party, or upon its expiration, the plaintiff company would buy from the defendant I. J. Gordon all goods which he might have on hand, provided they were returned during the life of the contract or promptly after its termination or expiration, the defendant I. J. Gordon to pay the freight to the point designated by the company, and the actual expenses of inspecting and overhauling. It was further agreed that the company should furnish to the defendant I. J. Gordon, from time to time, educational salesmanship literature consisting of Rawleigh's Weekly,

guide book, and other booklets, letters of advice, and suggestions, for the sole purpose of aiding and assisting him in making sales and collections, but it was expressly provided that nothing contained in the literature should be taken in any wise to alter, modify, change, or affect the agreement, and should only be considered as educational and advisory. It was further agreed that the written contract included and constituted the only and entire agreement between the parties, and that the contract could not be changed or modified in any particular whatever by any employee or representative of the company, in any capacity, unless the change or modification should first be specifically reduced to writing and signed by both parties, and then to become effective only when the corporate seal of the company should be affixed.

The petition alleges that in pursuance of said contract, the plaintiff sold and delivered to defendant goods in the sum of $2,476.85, and that he paid thereon the sum of $611.77, leaving a balance due of $1,865.08, and that in consideration of the extension of credit to said principal by said plaintiff, the defendants B. G. Reed, B. M. Luton, and J. H. Gordon entered into a contract of guaranty, whereby they guaranteed the faithful performance of said principal in the sum due thereon. Said guaranty is attached to and is made a part of said contract between the plaintiff and defendant I. J. Gordon. This contract of guaranty was signed by the said defendants B. G. Reed, B. M. Luton, and J. H. Gordon. The material part of the guaranty contract reads as follows:

"For and in consideration of the sum of $1 to me in hand paid, the receipt of which is hereby acknowledged and expressly confessed, or in consideration of the above-named seller extending further credit to the said buyer, we, the undersigned, do hereby jointly and severally guarantee unto said the W. T. Rawleigh Company the above-named seller, unconditionally, the payment in full of the balance due or owing said seller on account, as shown by its books at the date of the acceptance of this contract or guaranty by the seller, and the full and complete payment of all moneys due or owing, or that may become due or owing said seller, and all indebtedness incurred by the buyer under the terms and conditions of the above and foregoing instrument by the buyer named as such therein, and to all of the terms, provisions, and agreements contained in said instruments we fully assent and agree. * * *"

Attached to plaintiff's petition as an exhibit was an itemized verified statement of

I. J. Gordon's account with the plaintiff, showing the date on which each item was furnished.

The defendants answered in said case and alleged that there was nothing due on said contract and account, and if so that said contract as entered into between said parties was unlawful, void, and unenforceable, for the reason that the same was for the purpose of maintaining a monopoly and in restraint of trade, and in violation of the Act of Congress regulating commerce between the states, for the reason that the plaintiff compelled its agents to sell its products at the regular retail prices indicated and dictated by it.

The cause came on for trial before a jury, and after the close of the evidence for the plaintiff, the defendants demurred thereto, which demurrer was overruled by the court. At the close of all the evidence the court, upon motion of the plaintiff, instructed the jury to return a verdict in favor of the plaintiff in the sum and for the amount sued for, to which the defendants excepted. Motion for new trial was overruled, and the cause comes regularly on appeal to this court by the defendants.

A number of assignments of error are presented and discussed by counsel for defendants in his brief, but the only question raised by the pleadings, and the sole question to be determined, as we view the case, is whether the contract upon which the action is based is void under the Act of Congress in restraint of trade as contended by defendants. Counsel for defendants says in his brief:

"Defendants take the position that the contract as entered into between the plaintiff and the principal, Gordon, was void, illegal, and unenforceable, for the reason that said plaintiff was transacting its business in states other than its domicile, and that in the conduct o. its business that similar contracts were used, and that the way and manner in which said business was conducted by the plaintiff in dictating and controlling the retail prices at which all of its products were sold by the parties to whom it made an absolute sale of its products, that same was for the purpose of maintaining a monopoly of the goods manufactured by it and in restraint of trade, and that said contract was in contravention of the Act of Congress regulating commerce between the states (Act Cong. of July 2, 1890, ch. 647, 26 Stat. 209; U. S. Comp. St. 1916, sec. 8220)."

Numerous cases are cited in support of this proposition: Stewart v. W. T. Rawleigh Co., 58 Okla. 344, 159 Pac. 1187; Hunt v. W. T. Rawleigh Co., 71 Okla. 193, 176

Pac. 410; Brooks v. J. R. Watkins Co., 81 Okla. 82, 196 Pac. 956; and a number of Texas decisions.

It is conceded that there is a difference in the contracts involved in the Stuart v. Rawleigh Case and the case of Hunt v. Rawleigh, supra, and the contract in the instant case, in that the contracts involved in those cases provided that the buyer should sell the products handled by him at regular retail prices indicated by the company. In the Brooks v. J. R. Watkins Co. Case, defendants contend that the contract in that case is identical with the contract in the case at bar. It is held in the first paragraph of the syllabus in the Brooks v. J. R. Watkins Co. Case, supra, that:

"A contract of absolute sale, made by a medical corporation of its various manufactured preparations, in which the purchaser is to sell all goods purchased at regular retail prices to be fixed by the corporation, where its entire product is sold throughout the country only by means of like restrictive contracts, operates as a restraint of trade, unlawful as to interstate commerce under Act Cong. July 2, 1890, ch. 647, 26 Stat. 209 (U. S. Comp. St. 1916, sec. 8820 et seq.), upon the subject of trusts and restraints of interstate trade."

The contract in the instant case does not restrict and specify the territory, and does not restrict the defendant I. J. Gordon from selling the goods, wares and merchandise, except those manufactured and sold by the plaintiff company, and said contract does not require the defendant to sell the goods at any designated price indicated by the plaintiff company, but on the contrary the evidence discloses the plaintiff sold the goods to the defendant upon his written orders, and delivered them in pursuance thereto, and that the goods became the property of the defendant.

It is not seriously contended by counsel for defendants that the contract in question is ambiguous.

In J. W. Ripy & Son v. Art Wall Paper Mills, 41 Okla. 20, 136 Pac. 1080, the court said:

"An agreement of a retailer to buy a particular line of goods exclusively from a certain manufacturer thereof, for a limited period of time, and confined to a particular locality, in consideration of other covenants therein of mutual advantage to the parties, and when otherwise unobjectionable under the law, is not invalid because in restraint of trade." Citing numerous authorities.

It is true that in order to aid the defendant in selling the goods in question, the

plaintiff furnished him with certain literature, guides, and booklets, and with the specific understanding and statement in the contract that it would not modify, change, or affect the agreement, and was only educational and advisory.

With respect to the argument to the effect that the plaintiff company, having eliminated from the contract in the instant case those provisions contained in the contracts in the cases decided by this court, wherein ·the buyer agreed to sell the company's products at the regular retail prices indicated by it, now proceeded to furnish the defendant I. J. Gordon with certain literature, in which a price list of all goods to be sold was given to the buyer, it is sufficient to say that there is not a scintilla of evidence disclosed in the record before us to sustain this proposition. Defendants did not offer in evidence any of the literature which it is claimed indicated to the buyer the prices to be charged. There was no competent evidence adduced or tendered even tending to show that the plaintiff company had ever at any time, by its literature, correspondence, or otherwise, attempted to confine the defendant I. J. Gordon to sales in any particular territory, or to fix prices at which the goods should be sold by him, or to require him to devote his time and attention exclusively to the sale of the company's products.

The record stands upon the written contract and the amount due thereunder, together with the testimony of the secretary of the plaintiff company, that I. J. Gordon bought the goods outright, and that they belonged to him; that orders were received for the goods necessary to carry on defendant's business; and that the goods so ordered were promptly assembled and placed f. o. b. cars at Memphis, Tenn., and were then the property of the customer; that the relationship existing between the company and its customers is simply that of vendor and vendee, or buyer and seller, as they are called in the contract. There is no evidence of any kind or character disclosed by the record that the defendant 'I. J. Gordon was not in business for himself, and that he did not buy goods in question from the plaintiff company, the same as any other retail merchant buys goods from wholesale houses.

The contract involved in this case, and its bond of guaranty as signed by the defendants, stand wholly undenied, except in the allegation of the defendants' answer, for which there was no evidence of any kind or character.

In the case of Richards v. W. T. Rawleigh Co. (Colo.) 222 Pac. 650, the court held:

"A contract between a manufacturer of goods and a retailer, under which the goods were sold and delivered f. o. b. the point of manufacture, and which permitted the retailer to sell the goods where and in the manner and for what he pleased, held not void as in restraint of trade.

"The burden of proving the invalidity of a contract, performance of which was guaranteed by certain defendants as an affirmative defense, rests upon defendants asserting same."

With reference to the contention that this case should be reversed, for the reason that the defendants had no knowledge and no way of knowing that they were being held for goods sold prior to their having signed this contract, and that there was no way for them to have any knowledge that the suit was based upon goods sold and delivered prior to the defendant guarantors having signed said guaranty contract, we conclude that the language of the guaranty contract, signed by the defendants, heretofore quoted, shows that the defendants must have clearly understood that at the time 'they signed the guaranty contract they became liable unconditionally for the payment in full of the balance due or owing the plaintiff company on account, as shown by its books at the date of the acceptance of the contract of guaranty, and full and complete payment of all moneys due or owing, as well as moneys that might become due or owing the plaintiff company during the life of the contract.

"Where a guaranty expressly covers past and future transactions and is supported by a consideration arising out of the future transactions, it is good as to the whole." 28 C. J. 919.

·In 32 Cyc. 56, it is said:

"But if the surety becomes responsible for advancements to be made, as well as for the former debt, and such future advancements are made, there is a consideration for the entire indebtedness, past and future."

There is no conflict in the case relative to the amount of credit or the amount that was owing from the defendant I. J. Gordon, and guaranteed by the guarantors.

We think the judgment of the trial court should be affirmed.

Defendant in error in this case has asked for a judgment against the sureties on the supersedeas bond filed herein in the event the judgment of the trial court should be affirmed, it appearing that judgment herein

was superseded by a bond on which C. L. Beel, W. C. Sawyer, C. H. Sanders, A. C. Bickell, P. W. Swartz, and S. R. Reeves were sureties. Judgment is therefore rendered against the said sureties on the supersedeas bond.

By the Court: It is so ordered.

Note.—See under r(1) 27 Cyc. p. 899. (2) 28 C. J. p. 1025 § 194. (3) 28 C. J. 919 § 51; 12 R. C. L. "p. 1077; 2 R. C. L. Supp. p. 1546.