## J. R. WATKINS CO. v. PRUITT et al.

No. 17567.    Opinion Filed April 24, 1928.

(Syllabus.)

1. **Principal and Surety—Surety for Debt Due and for Future Transactions of Sale and Collection not Discharged by Failure of Obligee to Notify Surety of Principal's Gradually Increasing Indebtedness.**

A contract of suretyship for the payment by the principal to the obligee of an amount then due by the principal, which contract

also contains a continuing agreement of purchase and sale in which goods are to be purchased from time to time by the principal from the obligee, and paid for according to amounts collected by the principal on sales, as shown by his weekly reports, the sureties are not discharged by the fact that the seller permits the principal to become gradually more indebted to it, and does not notify the sureties of this fact.

2. **Same—Erroneous Instruction on Surety's Right to Notice.**

Under the foregoing facts, it was reversible error for the trial court to charge the jury that if they found from the evidence that the plaintiff extended to the buyer a greater credit than a person of reasonable prudence, knowing the financial ability of the buyer, would have extended in the management or care of his own business, and that default was made in the payments of credits extended and the plaintiff failed to give the sureties notice of such fact, the sureties would be relieved of any liability on the bond.

3. **Same—Action Against Sureties—Failure of Defense—Right of Plaintiff to Instructed Verdict.**

The answer of the sureties in this case failing to allege any acts of connivance or gross negligence on the part of the plaintiff obligee amounting to a fraud as against the rights of the sureties, and no evidence to that effect appearing in the testimony, held, that the court erred in not sustaining plaintiff's request for an instructed verdict.

Commissioners' Opinion, Division No. 2.

Error from District Court, Greer County; T. P. Clay, Judge.

Action by the J. R. Watkins Company against H. T. Pruitt, principal, and J. W. Reeves and F. M. Pruitt, sureties, on a contract and bond. Judgment for plaintiff against H. T. Pruitt, from which he does not appeal. Judgment in favor of J. W. Reeves and F. M. Pruitt, from which plaintiff appeals. Thereafter, upon death of F. M. Pruitt, cause revived in the name of Elvin F. Pruitt, his administrator. Reversed and remanded.

J. L. Carpenter, for plaintiff in error.

Garrett & Jeter, for defendants in error.

REID, C. The plaintiff, J. R. Watkins Company, a corporation, sued the defendants H. T. Pruitt, J. W. Reeves and F. M. Pruitt, for the sum of $1,662.77, with interest thereon from October 1, 1922, at the rate of six per cent. per annum.

Plaintiff alleged, in its petition, that it and the defendants entered into a written contract under date of December 1, 1921, whereby the defendants agreed to pay plaintiff $970.19, then due it by the principal, H. T. Pruitt, and also to pay such sums as the principal might become indebted to plaintiff for goods sold the principal during the life of the contract. And that while the principal was engaged in selling plaintiff's goods in Greer county, Okla., after the execution of the contract, he purchased goods in the amount of $2,410.30, and therefore owed the aggregate amount of $3,380.49, and upon which he paid, by various payments, the amount of $1,717.71, leaving a balance of $1,662.77, for which plaintiff asked judgment against the principal, H. T. Pruitt, and the sureties, J. W. Reeves and F. M. Pruitt.

H. T. Pruitt defended the suit, claiming that the contract was in violation of the Anti-Trust Laws of the United States, and therefore illegal and void; and in his cross-petition asked judgment against plaintiff for the sum of $1,735 on account of his alleged damage on his claim that the plaintiff had breached the contract made with him.

The sureties, J. W. Reeves and F. M. Pruitt, adopted the answer of their principal; and also alleging that the indebtedness of $970.19, owing by their principal at the time of the execution of the contract, had been paid and discharged, and as to the balance due, which they said was on the running account, they answered as follows:

"Further answering these defendants say that at no time were they ever notified that the defendant H. T. Pruitt was failing to pay for any goods, wares and merchandise sold by plaintiff to defendant H. T. Pruitt, or that his weekly reports that he was required to make under said contract to the plaintiff showed any balance due from said defendant to plaintiff at the end of each week, or at the end of each month; that the plaintiff, notwithstanding the terms of the contract, was under an implied obligation to notify and keep these defendants, as sureties upon said contract, duly informed of the condition of the account between H. T. Pruitt and it from week to week and from month to month."

To the answer of the principal, plaintiff filed a general denial, and specifically denied that the contract was in violation of the Anti-Trust Laws; denied that it had breached the contract in any way during the life thereof, and denied that the principal was entitled to any damage by reason of any allegation in his answer and cross-petition. And to the answer of the sureties, it denied all the allegations in the same, and adopted the allegations in its reply to the defendant H. T. Pruitt; and further denied that it was obligated to notify the defendants of the

status of its account with the principal, and prayed for judgment as on its original petition.

Upon a trial of the case before a jury, by direction of the court, the defenses based on the propositions that the contract was in violation of the Anti-Trust Laws of the United States, and on the cross-petition of defendant alleging the breach of the contract by the plaintiff, and for judgment for damages arising therefrom, were eliminated in favor of plaintiff by the court's charge, and no cross-assignments coming to us from the defendants thereon, those questions are not here in the case. And also, by direction of the trial court, complete recovery was had against the principal, H. T. Pruitt, and he does not appeal.

The verdict and judgment went against the plaintiff as to the sureties, F. M. Pruitt and J. W. Reeves, that it take nothing from them, and the plaintiff appeals. After the appeal F. M. Pruitt died, and the action was revived in the name of Elvin F. Pruitt, as administrator of his estate.

The evidence shows that the principal defendant, F. M. Pruitt, had been engaged in selling the products of the plaintiff, and was indebted to it in the sum of $970.19. And desirous of continuing to sell these products in Greer county, Okla., the principal entered into a contract with the plaintiff; the part bearing upon the questions presented by this appeal being as follows:

"In case he does not pay cash for said goods as hereinafter provided, to make to said company complete, regular, weekly, written reports of the amount of all sales and collections, which reports, however, or any of them, may be waived by said company, and also to furnish a statement of goods on hand and outstanding accounts when requested by said company so to do.

"And the party of the second part promises and agrees to pay to said company at Winona, Minn., the wholesale prices aforesaid, for the goods and other articles sold to him from time to time, as herein provided, and the prepaid freight, express, or postal charges thereon, if any, during said term, at the time and in the manner and in accordance with the provisions of the weekly report blanks of said company to be furnished to the party of the second part, and at the termination of this agreement to pay the whole amount therefor then remaining unpaid; or in cash, with the understanding that said company will allow a discount of three per cent. From said wholesale prices on all goods paid for on or before the 15th of each month, provided full payment for all goods furnished prior to the first of the month next preceding such

payment, and the indebtedness now due shall then have been made; but which payments, or any of them, may be waived or extended by the said company without notice to the sureties thereon, and without prejudice to the rights or interest of said company; and if the party of the second part shall not pay cash for said goods and other articles so sold and delivered to him, and the payments at the time and in the manner and in accordance with said weekly report blanks, as aforesaid are insufficient to pay therefor, or if the party of the second part shall fail to pay on the indebtedness now due, from time to time during said term, amounts satisfactory to said company, said company may, in its discretion, thereafter either limit the sales herein agreed to be made, or discontinue the same until such indebtedness is paid or reduced as said company may require." (Emphasis ours.)

The sureties did not affix their signatures to the main contract but signed a contract of suretyship, or guaranty, following the original contract as follows:

"In consideration of $1 to us in hand paid by the J. R. Watkins Company, receipt whereof is hereby acknowledged, and the execution of the foregoing agreement, which we have read or heard read, and hereby agree and assent to, and the sale and delivery by it to the party of the second part, as vendee, of goods and other articles, and the extension of the time of payment of the indebtedness now due from him to said company, as therein provided, we, the undersigned sureties, do hereby waive notice of the acceptance of this agreement and diligence in bringing action against said second party, and jointly, severally, and unconditionally promise, agree, and guarantee the full and complete payment of said indebtedness, the amount of which is now written in said agreement, or if not, we hereby expressly authorize the amount of said indebtedness to be written therein, and jointly severally and unconditionally promise to pay for said goods and other articles, and the prepaid freight, express, or postal charges thereon, at the time and place and in the manner in said agreement provided." (Emphasis ours.)

The evidence shows that the original indebtedness of $970.19 was carried along with subsequent purchases in the account of the principal, and from December 10, 1921, until the contract was terminated by the plaintiff, as either party had a right to do at any time, under the contract, the principal's purchases amounted to $2,410.30, and he paid plaintiff, by numerous payments during said time, the sum of $1,717.72, leaving a balance of $1,662.77. For most of the several months during the life of the contract, the purchases by the principal were more than the

payments he made, and he, therefore, it might be said, became gradually more indebted to the plaintiff. However, the contract to which the sureties affixed their signature provided that the plaintiff might extend the time of payment of the indebtedness then due from the principal to the plaintiff, and unconditionally promised to pay for goods and other articles thereafter sold the principal at the time and place and in the manner provided in the agreement between the plaintiff and their principal; and that agreement provided that if the principal did not pay cash for the goods, he would pay therefor in accordance with the provisions of the weekly report blanks of said plaintiff to be furnished the principal. And upon examination of the report blanks in evidence, we find that the principal was required to make them weekly, and to remit one-half his cash receipts for the preceding week, and this the principal did in all cases, though even this requirement could have been waived by the plaintiff under the terms of the contract.

The evidence shows that during this time, the sureties made no inquiry as to the status of the account of their principal, and no notice was given them by the plaintiff, obligee, until September 1, 1922, as to the condition of the principal's account, at which time the plaintiff wired the sureties and the principal, saying that it had terminated the contract, and that any amount owed by the principal was then due.

The conduct of the plaintiff in permitting the principal to increase his indebtedness, and its failure to notify the sureties thereof, presented the sole defense of the sureties upon their answer and evidence as the case went to the jury, and upon this defense the court gave the following charges:

"(4) And if you find and believe from a preponderance of the evidence in this cause that the said plaintiff in violation of the implied provisions of the contract extended, to its salesman or agent a greater credit than a person of reasonable prudence knowing the financial ability of said salesman or agent would have extended in the management and care of its own business, and that default was made in the payment of credits extended to him, and that the plaintiff failed to give the sureties, F. M. Pruitt and J. W. Reeves, notice then or thereafter, then and in that event the said sureties F. M. Pruitt and J. W. Reeves would be relieved of any liability on the bond so signed by them and your verdict should be for the defendant."

"(5) You are further instructed that if you should find and believe from a prepon-

derance of the evidence that the plaintiff extended to the defendant H. T. Pruitt a line of credit such as a reasonably prudent person would have extended to its agent, considering the financial responsibility of the said H. T. Pruitt, and that the said H. T. Pruitt failed to make payment thereof, and that thereafter the said plaintiff, in violation of the implied terms of its contract, continued to extend credit to the said H. T. Pruitt in excess of that which a reasonably prudent person would have extended to his agent of like financial responsibility without giving the sureties, F. M. Pruitt and J. W. Reeves, any notice, then and in that event, the plaintiff could only recover such amount, if any, as you may believe from a preponderance of the evidence, as was extended as a credit to the said H. T. Pruitt and for which he failed to pay the first time, if he did."

The plaintiff had attacked the defense, submitted by the foregoing charges, by demurrer to the answer of the sureties setting it up; by objection to the testimony of the sureties thereon; and by exception to the court charge presented the issue to the jury.

In 21 R. C. L. p. 1072, we find the law applicable to this case stated as follows:

"Thus in the case of a continuing suretyship for the honesty of a servant, clerk, or other agent or employee, it has been held that if the master discovers that the servant has been guilty of dishonesty in the service, and if, instead of dismissing him, he continues him in his employ without the consent of the surety, express or implied, the latter is not liable for any loss arising from the dishonesty of the servant during the subsequent service, it being said that in all such cases there is in the suretyship contract an implied stipulation that the employer will not knowingly retain such employee in his service after a breach of the guaranty justifying his discharge, and that in the event he does so without the surety's consent, it is to be at the employer's own risk. This rule applies as well to a private corporation as an employer as to an individual when its agent in the discharge of his duties, discovers the dishonesty of the servant, and, having authority, fails to give notice of such dishonesty to the surety, and the corporation thereafter retains the servant in its employ. The rule, however, has no application to mere breaches of duty or contract obligations on the part of the servant not involving dishonesty on his part, or fraud or concealment on the part of the master, and the default must be such as points to moral turpitude or lack of integrity, rather than a want of diligence or punctuality."

The state of facts necessary to relieve a surety, by application of the foregoing doctrine, is not found in the answers of the sureties in this case, nor in their testimony

which was alone to the effect that they were never notified by the plaintiff of the status of their principal's account until September 1, 1922.

In 21 R. C. L. page 1034, we find the applicable rule well stated, with more detail, as follows:

"A defense on the ground of mere laches is, it seems, inconsistent with the relation of the parties. The obligation of a surety is not conditional but absolute. His undertaking to pay is not in the event of the inability or unwillingness of the principal, but at all events, and under all circumstances, as much so as if he were himself the sole debtor. Such is the form of his obligation (unless specially qualified) whether separate or joint, and such its true intent and meaning; and it is founded on a lawful and sufficient consideration the credit given to the principal by his procurement. Since, then, it is the duty of the surety, as well as the principal, to see to the payment of the money, the mere forbearance of the creditor to sue or to call on the principal for payment may be beneficial to both parties and in truth it is regarded as a tacit indulgence given to both, in which the acquiescence of the one is equally significant with that of the other, it being held to be a fair presumption that an indulgence given from mere motives of benevolence, without consideration or prospect of advantage to the creditor, is intended for the benefit of the surety as well as of the principal, and is founded on his presumed assent. If, however, a surety is dissatisfied with the degree of activity displayed by the creditor in the pursuit of his principal, he is not without a remedy. He may pay the debt himself, which subrogates him to all the rights and remedies of the creditor, and he may then manage the affair to suit himself. He may, on paying the debt of the principal pursue the latter for his own benefit, and, furthermore, in such a case, he is entitled to be put in the place of creditor, and may avail himself of all or any of the collateral securities, means or remedies which the creditor has for enforcing payment against the principal, and he may have them assigned to him under such terms as a court of chancery may order. And, although a creditor's forebearance to sue is presumed to be for the benefit of both surety and principal, the rule that mere forbearance will not discharge a surety is not altered where it is shown that it is in fact prejudicial to the surety for, it has been said, it is his peculiar business to judge of the danger to be apprehended from delay, and to quicken the creditor, where the occasion requires it, in the way known to the law; in default of which the loss incurred is necessarily to be attributed to his own supineness."

In the case of McKecknie v. Ward, 58 N. Y. 541, the plaintiffs, by written contract, let to the principal, Barnes, the agency for the sale of their ale in the city of Syracuse. Barnes agreed to purchase the ale necessary for his sale in that district, and to pay for the amounts purchased during the month on the first of each succeeding month. The sureties executed a bond for the faithful performance of the contract on the part of Barnes. During a period of three years the plaintiff at various times sold Barnes large quantities of ale, and received various payments thereon, leaving a balance of more than $12,000 due and unpaid, which they demanded that the sureties pay, and after refusal they brought an action to recover against the sureties, and prevailed in the trial court. The Supreme Court in stating the defense of the surety and applying the law thereto, said:

"The point is that the conduct of the plaintiffs, in allowing the account of Barnes, for ale sold and delivered, to go on from month to month for three years, without exacting payment, according to the terms of the agreement, they all the while knowing that his indebtedness was large and increasing, and in omitting to give notice to the appellant thereof, operated to discharge the appellant from his suretyship. This point is twofold: First, it presents the effect of the indulgence given to Barnes by the plaintiffs; it asserts that it was their duty to the appellant, to insist upon and enforce payment from Barnes, of each month's payment as it became payable, or in a reasonable time thereafter. If the contract of the appellant was one that Barnes should pay to the plaintiffs, a single certain sum on a certain day, or a gross ascertained sum, in installments, on given days, such duty would not rest upon the plaintiffs. Mere forbearance, or omission of the creditor to sue, will not, in such case, discharge the surety, unless the creditor be under some obligation to sue, or unless forbearance would prejudice the claim of the surety upon the principal, and thereby work his injury. There must be some binding agreement between the creditor and the principal, giving time, whereby the former has tied his hands, so that he cannot proceed to collect, before such forbearance will affect his claim upon the surety. (Orme v. Young. 1 Holt N. P. R. 84: Herrick v. Borst, 4 Hill, 650; Brown v. Curtiss, 2 N. Y. 225.) The contract of suretyship is, however, different here. It is not for the payment of a definite sum at a given day; it is for a continuing transaction, contemplating a recurring indebtedness, to be made and extinguished monthly, renewable as often and as soon as paid. Yet the older authorities hold that in such case, also, mere indulgence shown by the creditor to the principal, without a binding agreement for an extension of time for payment,

does not discharge the surety. (p. 546, 7.) * * *

. "I think that the conclusion must be that the rule (formerly at least) prevailing in England, and held in this state, is that the mere indulgence of the creditor in such a case as this will not discharge the surety; that beyond the bare neglect of the creditor to enforce payment or performance from the principal, there must be some act of connivance or gross negligence amounting to willful shutting of the eyes to the fraud." (p. 549.)

We are not without authority in this state upon the question here presented. In the case of Chicago Crayon Co. v. Rogers, 30 Okla. 299, 119 Pac. 630, the facts offered a much stronger defense for the sureties than made by the sureties in this case. And the court's charge was very similar to the one in the present case. In the trial court, the sureties won, and in reversing the case, this court said:

"The surety signing a bond, such as the one sued on in this case, undertakes that the principal will perform his contract. A failure to perform renders him liable without notice. It is only where there is moral turpitude upon the part of the principal, as distinguished from a mere failure to perform his contract, that the duty is imposed on the obligee to notify the surety. There is no evidence in this case showing that Rogers had been guilty of moral turpitude. He made correct statements of his accounts. He did not conceal his alleged shortage. He continued working, apparently intending to satisfy his employer, and there was no evidence in the case tending to show that he was guilty of any criminal misconduct. See Home Insurance Co. v. Holway, 55 Iowa, 571, 8 N. W. 457, 39 Am. Rep. 179; Richmond P. R. R. Co. v. Kasey, 30 Grat. (Va.) 218."

The effect of the instructions given in this case was to advise the jury that, if the plaintiff extended to the principal a greater line of credit than would have been given by a reasonably prudent man if the principal had no sureties, and did not give notice to the sureties of the credit so extended, the sureties would be discharged. We do not conceive this to be the law applying to the facts in this case, but the evidence must have further shown some act of connivance, or gross negligence amounting to a fraud, as against the rights of the sureties, on the part of the plaintiff, which facts were neither pleaded nor evidence submitted to that effect by the sureties.

Neither the answers of the sureties, nor their testimony, presented any defense to the action. The court erred in submitting any issue to the jury, and should have followed the request of the plaintiff, and instructed the jury to render a verdict for the plaintiff.

We are inclined to think that the trial court relied upon the decision of this court in the case of Sparkman v. W. T. Rawleigh Medical Co., 97 Okla. 162, 222 Pac. 1014, as the law to be applied in the trial of this action. However, that case is no longer to be considered as authority in this state, for the reason that the same has been superseded by a decision of this court in that case, which is found in 117 Okla. 235, 245 Pac. 828, and which follows the case of Gordon v. W. T. Rawleigh Co., 117 Okla. 235, 245 Pac. 825.

And, aside from the legal questions involved in this case, which we have found, must be decided against the sureties, and, while the question really has no place in the opinion, let us see what the equities are in this matter. Under the terms of the contract, the plaintiff had the right to terminate the contract at any time without assigning any reason therefor; hence, neither the principal nor the sureties could complain that the plaintiff exercised this right. The contract provided that upon termination thereof, the principal might return to the seller goods he had not sold and receive cash, or credit on his account. The principal testified that, when the contract was terminated, he had $1,400 or $1,500 of unsold goods on hand, and that he had outstanding accounts amounting to $1,619.95. He was owing the company at that time only the sum of $1,662.77. If he had returned the goods, he would have owed about $200, and certainly the collectible accounts would have paid this. The sureties had the right to demand that their principal apply these assets to the debt he owed, but they seem to have failed to take any steps looking to their protection. And this case illustrates the long-established fact that in the administration of the law, courts have found it difficult to protect those who make no effort to save themselves.

The judgment of the trial court should be reversed and remanded, with directions to proceed with this case in a manner not inconsistent with the views herein expressed.

TEEHEE, BENNETT, FOSTER, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 28 C. J. pp. 962, 963, §113; 21 R. C. L. p. 1072. (2) 28 C. J. p. 1035, §208. (3) 28 C. J. p. 1032, §203.